DOUGLASS E. THOMPKINS *v.* STATE OF INDIANA

[No. 1277S801. Filed December 27, 1978. Rehearing denied February 23, 1979.]

*Robert G. Mann*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Rollin E. Thompson*, Assistant Attorney General, for appellee.

PRENTICE, J. — Defendant (Appellant) was convicted in a trial by jury of two counts of first degree murder, traditional and felony, Ind. Code § 35-13-4-1 (Burns 1975); commission of a felony while armed, to-wit:    robbery, Ind. Code § 35-12-1-1 (Burns 1975); assault and battery with intent to kill, Ind. Code § 35-13-2-1 (Burns 1975); and infliction of physical injury in the commission of a robbery, Ind. Code § 35-13-4-6 (Burns 1975). He was sentenced to life imprisonment on Counts I and II, with judgment withheld on the remaining counts. He raises the following as errors on appeal:

(1)   The denial of his motion for a mistrial based upon the misconduct of the prosecuting attorney.

(2)   The admission of testimony from three of the State's witnesses whose names had allegedly been withheld from the defendant in violation of a discovery order.

(3)   The ordering of blood samples taken from the defendant without a search warrant.

(4)   The sustaining of the prosecutor's objections to testimony concerning certain conversations between the defendant and several of the State's witnesses on the grounds that such testimony constituted hearsay.

(5)   The sentencing of the defendant for both first degree murder and felony murder.

(6)   The giving of final instruction No. 39 which commented on the fact that the defendant had testified on his own behalf.

(7)   The sufficiency of the evidence upon which the verdict was based.

Early in the evening on March 21, 1977, the defendant, Albert Crombaugh and Jerry Taylor met to discuss plans to rob the Beef Quarter

Restaurant. On arriving at the restaurant, Taylor, a former employee of the restaurant, entered first, followed by Crombaugh who was carrying a knife, and the defendant. All three were wearing nylon stockings over their heads as masks. Two of the restaurant's employees testified that they thought they recognized Jerry Taylor as the first one to enter the restaurant, although they could not positively identify either of the other two who followed him. Crombaugh proceeded to tie up the customers in the lounge, while the other two took the cashier into another room to get the money from her cash drawer. As he was tying the decedent, James Blanchard, a struggle started during which time one of the other customers, Harry Panchot, got loose and went over to help Blanchard. Both Panchot and Blanchard received knife wounds during the struggle. Crombaugh called for help, and the defendant came out of the kitchen yelling for Taylor to bring the gun. Crombaugh testified that as he was crawling on the floor out of the lounge area, he heard the gun discharge but could not see which of his accomplices fired it. Panchot testified that as the gun fired, Blanchard fell to the floor. Blanchard later died as a result of knife and gunshot wounds.

As defendant and his accomplices were making their escape, they found that the back door was locked. The defendant, using the butt of the gun, tried to break the glass. Having partially broken it, he broke the rest with his hand. All three got into Crombaugh's car and left, with the defendant riding in the back seat.

## ISSUE I

During the State's cross examination of the defendant's mother, the following question was asked of her:

"Q. Mr. Mann (counsel for the defendant) asked you if your son had ever been arrested and convicted, Mrs. Thompkins. Did you know your son had been arrested for carrying a concealed weapon in Muncie, Indiana?"

Defense counsel objected to such questioning before the witness could respond, and moved the court to declare a mistrial alleging that the question was highly prejudicial to the defendant. The prosecutor contended that the question was proper inasmuch as the defendant had opened the door to such questioning by propounding a previous question to the same witness concerning the defendant's prior arrests and convictions.

The court overruled the defendant's motion but admonished the jury to disregard the prosecutor's question.

Later in the trial, during the State's cross examination of the defendant, the following questions were asked:

"Q.  You had money at your mom's house from other robberies, didn't you?

"Mr. Mann:   Just a minute. What's the question, again?

"Q.  That two hundred dollars that you had with your mother was from other robberies, wasn't it?

"A.  The two hundred I had . . .

"Q.  Yes or no?

"A.  No."

Defense counsel once again objected to the questioning and moved for a mistrial upon the grounds that the question created an improper inference in the jury's mind that the defendant could have committed the robbery in question. The court overruled the motion and properly admonished the jury to disregard the statement.

During the State's closing argument, the prosecutor made the following comments to the jury:

". . . And, let me tell you, ladies and gentlemen, you can know that all three of those people have committed many other crimes . . ."

Counsel for the defendant again moved the court to declare a mistrial because of the State's repeated references to matters not in evidence. The motion and argument thereon were made in the presence of the jury, at which time the prosecutor stated that she was only attempting to draw an inference from the evidence and was not speaking from any personal knowledge of the defendant's prior activities. The court overruled the motion with a warning to the State to refrain from injecting personal opinion into closing argument.

The granting of a mistrial rests largely in the sound discretion of the trial judge. *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. His decision will be reversed only where it can be shown that such discretion has been abused. The standard to be applied by a

trial judge in determining whether to grant or deny a defendant's motion for a mistrial based on prosecutorial misconduct, is whether the misconduct, under all of the circumstances, "places (the defendant) in a position of grave peril to which he should not have been subjected." *White v. State, supra; Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

Granted, in this case the prosecutor's conduct was improper. Such comments come perilously close to conduct for which a conviction will be reversed. However, in the first two instances the trial judge, who was in a better position than are we to determine the impact of such conduct, took prompt action and admonished the jury to disregard the questions; and in the third instance, he warned the prosecutor to refrain from making further improper comments. Such measures are presumed to cure the error, *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798, and we defer to the trial judge's discretion in such matters unless clear error is shown.

## ISSUE II

One week prior to the start of the trial, the defendant filed an alibi statement in which he detailed his activities on the day and night of the robbery and shooting. At trial, the defendant took the stand and related the basics of his statement. In rebuttal, the State presented three witnesses whose testimony contradicted certain specific portions of the alibi. None of the names of the witnesses had been included in the State's response to the defendant's motion to produce the names and addresses of all persons they intended to call as witnesses and of all persons who may have had some knowledge of the facts of the case but who would not be called as State's witnesses.

The defendant objected to the admission of the testimony of each of the witnesses upon the grounds that their names were not included upon the list of witnesses furnished by the State and, in the alternative, requested that the trial court grant a continuance to permit an investigation of the contradictions. A question was raised at trial as to when each of the witnesses had been first contacted by the State concerning the case. On appeal, the defendant argues that the trial court erred in overruling his motion and in allowing the witness to testify.

The law is clear in Indiana that a trial judge may permit a witness to testify although he has not been previously named upon the list of witnesses. This is especially true as to rebuttal witnesses, inasmuch as the State cannot be expected to anticipate the witnesses that they will call for that purpose. *Chatman v. State*, (1975) 263 Ind. 531, 334 N.E.2d 673. In addition, a trial judge is allowed discretion in the granting of a continuance. *Lund v. State*, (1976) 264 Ind. 428, 345 N.E.2d 826; *Popplewell; Maynard v. State*, (1978) 269 Ind. 323, 381 N.E.2d 79. Given that the State was under no obligation to provide the defendant with a list of its rebuttal witnesses, the court was under no obligation to grant the defendant's motion for a continuance.

## ISSUE III

An investigating officer testified at trial that blood stains had been found in the back seat of the car allegedly used in the robbery, a 1970 brown Buick. Blood samples were taken from the decedent, a patron of the restaurant who had been stabbed and one from the defendant's alleged accomplices, in an effort to determine whose blood had been found in the back seat of the car. Pursuant to a motion by the State, granted by the trial court, a blood sample was also taken from the defendant. The results of the tests indicated that the defendant's blood was typed "A", as was the blood found in the car. Each of the other individuals tested had blood type "O".

The defendant moved to suppress the test results, which motion was overruled by the trial court, and the evidence was admitted over the defendant's objection that a search warrant should have been obtained prior to the taking of the sample.

We have previously upheld discovery orders which "permit the taking of samples of (a defendant's) blood, hair and other materials of his body which involve no unreasonable intrusion thereof." *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433. In the instant case, the serologist who analyzed the defendant's blood testified at trial that the blood sample had been taken at the medical office of the Marion County Jail by Dr. Fred Rice according to accepted medical practices. Since the test was performed in a proper manner pursuant to a discovery order and re-

quired no unreasonable intrusion of the defendant's person, we find no error in the admission of the test results.

## ISSUE IV

The defendant next contends that the trial court erred in sustaining several of the State's hearsay objections to questions propounded by defense counsel. The first instance to which reference is made concerns the testimony of Damita King. Although the court initially sustained objections to certain portions of her testimony on the grounds that it constituted hearsay, she was later allowed to answer the defense counsel's questions concerning the defendant's explanation of how he came to have blood on his hands on the night of the robbery and murder. We, therefore, find no merit in this portion of the defendant's argument.

A similar objection was sustained during the direct examination of the defendant's mother concerning a telephone coversation that she had had with the defendant. He had stated to her that he had no reason to run. The court refused to admit the testimony on the grounds that it was an out of court statement made with no opportunity for cross examination and a selfserving declaration. The court was correct in its ruling since such statements are generally held to be self-serving and thus inherently unreliable. The danger to be avoided in holding such statements inadmissible, is the possibility that the statement was made as part of a hastily formed plan of defense. *Cain v. State*, (1973) 261 Ind. 41, 300 N.E.2d 89.

The final instance occurred during the direct examination of the defendant. The defendant had testified that he had not been involved in the robbery of the restaurant and had proceeded to give a rather detailed account of his whereabouts on the evening in question. When asked about the last time that he had seen his alleged accomplice, Albert Crombaugh, the defendant answered that he had seen him in the early morning hours after the robbery. He then began to relate the details of a conversation that had taken place between himself and Crombaugh, at which time the State objected on the grounds that the testimony was hearsay. The defendant made an offer to prove that had he been allowed to answer the question posed to him, his answer would have been that he had given Crombaugh an account of his actions that evening.

Since both the defendant and Crombaugh were in court and available for cross examination, any testimony concerning their out of court assertions should have been ruled admissible as falling within an exception to the hearsay rule. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. Regardless, however, of whether the testimony was wrongfully excluded by the trial court, the defendant has failed to show how he was prejudiced by its exclusion. The excluded testimony was merely repetitive of his earlier testimony which had detailed his activities on the night of the robbery. It could not have added significantly to his case, since the probative value of both statements rested solely upon his credibility. The exclusion of the testimony was harmless error.

## ISSUE V

The defendant is correct in his contention that the trial court erred in entering judgment and sentence on his convictions for both felony murder and first degree murder. Since there was only one murder committed, to allow both judgments to stand would amount to double punishment. *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713; *Franks v. State*, (1975) 262 Ind. 649, 323 N.E.2d 221. Therefore, sentencing on one of the counts must be vacated.

## ISSUE VI

The defendant alleges that the trial court erred in giving instruction No. 39 which referred to the defendant's having testified on his own behalf and stated that his testimony should be given the same weight as that of any other witness. On appeal he argues that the court, in effect, instructed the jury to more carefully scrutinize and weigh his testimony with a higher standard than that applied to the other testimony. As the defendant has failed to set out the verbatim objection made at trial to the giving of said instruction, as required by Appellate Rule 8.3(A)(7), we decline to treat the issue further, other than to say that it appears to be without merit.

## ISSUE VII

As his final assignment of error, the defendant challenges the sufficiency of the evidence upon which the verdict was based. He contends that the only real evidence against him was the testimony of his alleged

accomplice Albert Crombaugh, whose testimony should have been carefully scrutinized because of a plea bargain that had been made with the State. In contrast, he points to his alibi statement, which had been supported by the testimony of several witnesses.

When considering a claim of insufficient evidence, as a court of review we will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley v. State,* (1977) 267 Ind. 396, 370 N.E.2d 360; *Robinson v. State,* (1977) 266 Ind. 604, 365 N.E.2d 1218. It is the jury's function as the finders of fact to make a determination as to the credibility of each witness. In reviewing their decision we will look only to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom to determine whether the evidence supports the verdict upon each of the essential elements of the crime charged beyond a reasonable doubt. *Baum v. State,* (1976) 264 Ind. 421, 345 N.E.2d 831.

In viewing the evidence in such a light, we cannot agree with the defendant's contentions that the testimony of the State's witnesses is so replete with conflicts that, using all reasonable inferences, it would tend to support the defendant's innocence. In addition to Crombaugh's testimony which went into great detail as to the defendant's role in the planning and execution of the crimes, there was testimony from several other witnesses corroborating his statement. Harry Panchot's version of the events, as they occurred that night, coincided with Crombaugh's on most of the essential details, as did the testimony of the cashier. Both Damita King and Michele McGhee testified to having seen the defendant in the early hours following the crime. His hand was bandaged; he had blood on his shirt, and he was carrying a gun.

We find no reversible error. This cause is remanded to the trial court with instructions to vacate one of the life sentences. In all other respects, the judgment of the trial court is affirmed.

Givan, C.J. and Hunter and Pivarnik, JJ. concur;

DeBruler, J. dissents.

NOTE — Reported 383 N.E.2d 347.