**Douglas E. THOMPKINS, Petitioner–Appellant,**

v.

**Edward L. COHEN, Respondent–Appellee.**

**No. 90–1207.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1992.

Decided June 3, 1992.

Ginamarie A. Gaudio, Williams & Montgomery, Chicago, Ill., Thomas Broden (argued), University of Notre Dame, Notre Dame, Ind., and Roberta L. Ross, Ross, Burnner & Strahm, Indianapolis, Ind., for petitioner-appellant.

David A. Nowak (argued) and Kimberlie A. Forgey, Deputy Attys. Gen., Office of the Atty. Gen., Federal Litigation, Indianapolis, Ind., for respondent-appellee.

Before CUMMINGS and POSNER, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

POSNER, Circuit Judge.

In 1977 a jury in an Indiana state court convicted Douglas Thompkins of first-degree murder. The judge sentenced him to life in prison. The supreme court of the state affirmed the conviction and sentence. *Thompkins v. State*, 270 Ind. 163, 383 N.E.2d 347 (1978). After exhausting his state remedies, Thompkins sought federal habeas corpus. He appeals from the district court's denial of his claim for relief.

Three masked men robbed a restaurant. During the course of the robbery one of them killed a customer. Another cut his

hand in the escape. One turned state's evidence and testified that Thompkins had been one of the band. This testimony was corroborated by a friend of Thompkins', who testified that he had seen Thompkins after the robbery with his hand bandaged and carrying a gun, and by evidence that the blood found in the getaway car was of the same blood type as Thompkins', while the blood of the other robbers, and also of the murdered customer, was of a different type. Thompkins introduced alibi evidence.

 He claims that he did not get a fair trial, and this for three principal reasons (the others have no possible merit, so they need not be discussed). The first is that his lawyer had a conflict of interest. He was under investigation for bribing police officers to reduce charges against his clients. The prosecutor's office—the same office that prosecuted Thompkins—had given the lawyer immunity in exchange for cooperation and had promised, if the lawyer fulfilled his part of the bargain, to help him retain his license to practice law. A situation of this sort (the criminal defendant's lawyer himself under criminal investigation), which unfortunately is all too common, see, e.g., *United States v. Balzano*, 916 F.2d 1273, 1292–93 (7th Cir.1990); *United States v. Levine*, 794 F.2d 1203 (7th Cir.1986), can create a conflict of interest. It may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer. Such retaliation would be unethical; but still the defense lawyer may fear it, at least to the extent of tempering the zeal of his defense of his client somewhat. Yet presumably the fear would have to be shown before a conflict of interest could be thought to exist. But let us pass that point by and assume that the situation in this case as we have outlined it created a conflict of interest. The existence of a conflict does not automatically entitle the defendant to habeas corpus on the ground that he was deprived of his constitutional right to the effective assistance of counsel. Unless the conflict was brought to the trial judge's attention, the defendant must point to specific instances in which the lawyer would have done something different in his conduct of the trial had there been no conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); *United States v. Cirincione*, 780 F.2d 620, 630–31 (7th Cir. 1985). Thompkins hasn't pointed to anything, but there is a complication: the trial judge may have known about the lawyer's entanglements with the criminal justice system. If so, he was required to inquire into the matter further and determine, for example, whether the defendant wanted to be represented by this lawyer regardless. *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Cerro v. United States*, 872 F.2d 780, 783 (7th Cir.1989).

 When the lawyer was asked at Thompkins' state post-conviction hearing whether he had told Thompkins about his own legal troubles, the lawyer testified: "I don't recall whether I talked to him or not. It was on the front page of every other paper, morning and evening, and on the six o'clock news, so *I imagine everybody in town was aware of it.* Perhaps he wasn't." (Emphasis added.) Thompkins' current counsel pounces on the statement we have italicized and argues that everybody includes the judge. That is conjecture. Not everybody watches the six o'clock news every night. Indianapolis is not a little village in which everybody has his nose deep in everybody else's affairs. It is true that in response to a specific question whether the judge at Thompkins' trial had known about the lawyer's legal troubles, the lawyer said, "Yeah, he knew it." But the issue was not pursued, leaving it unclear whether the lawyer was doing more than deducing that since "everybody in town was aware of it" the judge, as somebody in town, must have been aware of it. The conclusion of a syllogism is no stronger than its premises.

Neither the state courts nor the federal district court have ever made a finding on the question whether the trial judge knew about the lawyer's troubles. However, Thompkins does not complain about the absence of a finding or ask for a remand to

the district court for further findings or evidence. He asks us to find *on this record* that the judge knew. We cannot do that; the record is too skimpy. Thompkins has failed to prove that the judge knew of the circumstances alleged to create a conflict of interest.

■ The second issue concerns the prosecutor's failure to give Thompkins the names of the three rebuttal witnesses before they testified. At first glance this seems a hopeless endeavor to establish a constitutional right to pretrial discovery in criminal cases. There is in general no such right, *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977), though the *Brady* rule is of course an exception. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). Pretrial discovery is in fact a relative novelty in the criminal process. The Supreme Court has held, however, in the name of due process, that if a state does provide for discovery in criminal cases, "discovery must be a two-way street." *Id.* at 475, 93 S.Ct. at 2212. If as here the defendant is required to disclose the names of his witnesses to the prosecutor in advance, the prosecutor must disclose the names of his rebuttal witnesses to the defendant in advance. *Id.* at 475–76, 93 S.Ct. at 2212–13; *Mauricio v. Duckworth,* 840 F.2d 454 (7th Cir.1988). So there was error. But it undoubtedly was harmless. The rebuttal witnesses were brought in to counter Thompkins' alibi witnesses, consisting of his mother, two sisters, and two friends of one of the sisters. Suppose that the evidence of the rebuttal witnesses had been excluded because of the failure to notice them up in advance. A rational jury would not have believed the alibi witnesses even if there had been no rebuttal. It is easy enough to produce an alibi witness, especially if one is blessed with many relatives; the question is, what weight would a rational jury give such a witness's testimony in light of the evidence reviewed at the beginning of this opinion powerfully corroborating the testimony of Thompkins' accomplice? We think very little.

■ We come to the third issue. At the time of trial Thompkins had no criminal record. But the prosecutor repeatedly insinuated that he had committed other crimes. On cross-examination she asked Thompkins' mother (one of his alibi witnesses, remember) whether she knew that her son had been arrested for carrying a concealed weapon. Later she asked Thompkins whether the $200 that he had at his mother's house "was from other robberies"? And in closing argument she told the jury that all three of the defendants had "committed many other crimes." The Indiana Supreme Court, while remarking that "the prosecutor's conduct was improper" and that "such comments come perilously close to conduct for which a conviction will be reversed," held the error harmless because the first two times the judge had told the jury to pay no attention to the question and the third time he told the prosecutor in the jury's presence to refrain from improper comment. 383 N.E.2d at 350.

■ Whether the error was harmless is not the issue here. There is no federal constitutional right not to be questioned about prior crimes, whether or not one has been convicted of them or for that matter has committed them. *Brecht v. Abrahamson,* 944 F.2d 1363, 1367 (7th Cir.1991); *Stomner v. Kolb,* 903 F.2d 1123, 1129 (7th Cir.1990). The only federal right in play is the general right to a fair trial, and to prevail on this ground a defendant must show that the errors or irregularities of which he complains probably caused a miscarriage of justice, that is, the conviction of an innocent person. *Leach v. Kolb,* 911 F.2d 1249, 1257 (7th Cir.1990); *Ferrier v. Duckworth,* 902 F.2d 545, 548 (7th Cir. 1990). So rather than harmlessness beyond a reasonable doubt being a defense to invalidating the conviction because of constitutional error, harm consequential enough to work a miscarriage of justice— severely prejudicial harm, in other words— must be shown when the defendant is claiming not the denial of a specific constitutional right such as the right to confron-

tation or to the assistance of counsel but general procedural unfairness in violation of due process of law. *Dudley v. Duckworth,* 854 F.2d 967, 972 (7th Cir.1988), makes this point but then goes on, in dictum, to conduct a harmless-error analysis. The additional step was unnecessary; a prejudicial error cannot be harmless.

Given the strong evidence of Thompkins' guilt, we cannot say that he has carried his burden of proving that the improper evidence of other crimes may well have caused the conviction of an innocent person.

AFFIRMED.