976 F.2d 735
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Al DAVIS, Petitioner-Appellant,
v.
Michael P. LANE, Director, Department of Corrections, J.W.
Fairman, Warden, Joliet Correctional Center, Neil
F. Hartigan, Attorney General of the
State of Illinois, et al.,
Respondents-Appellees.
 No. 91-2082.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 28, 1992.*
Decided Sept. 18, 1992.
 
 Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Al Davis appeals the denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. He challenges his state convictions, following a jury trial, for murder, armed robbery and burglary. First, Davis contends that the state court erroneously admitted a coerced confession. He also claims that his convictions should be overturned because the prosecutor, in closing argument, improperly asserted that the confession of his co-defendant could be used as evidence against his guilt.
 
 I. FACTS
 
 2
 On January 2, 1981, Chicago police officers discovered the body of Frank Collins in his apartment. Collins' skull had been cracked open. On January 10, at approximately 9:00 p.m., police officers questioned Al Davis and his live-in girl friend Billy Jean Parker, Collins' neighbors, concerning the murder. The police showed Davis a photographic array, from which Davis identified the pictures of "Nino" and "Bob", two individuals who had robbed Collins several weeks earlier. The officers asked Davis to come to the police station to further aid in the identification of these individuals.
 
 
 3
 At the station, Davis was taken to a small interview room where he was asked to wait to speak with some officers on the following shift. Davis remained in the room the entire night, until Detectives Paul Carroll and Frank Kajari came to speak with him at 9:30 a.m. on January 11. He told the officers that he was not home on the night of the murder, December 31, 1980, but that Nino and Bob subsequently told him that they killed Collins. The interview lasted approximately one and one-half hours. The officers drove back to the apartment building to determine whether Parker would confirm the information provided by Davis. Parker told the officers that they indeed went out on December 31, but she stated that they left later in the evening.
 
 
 4
 Because of the inconsistencies in information provided by Davis and Parker, the police became suspicious of Davis. They returned at about 1:00 p.m., read Davis his Miranda rights, and asked him for more information. Davis asked for about five minutes "to get his head together." The officers returned about ten minutes later and again read Davis his rights. Davis then told police that Nino and Bob came over to his apartment and asked Davis to help them get into Collins' apartment so they could rob him. Davis did so, and observed Nino hit Collins in the head three or four times with a baseball bat. Nino and Bob then took some items from Collins' apartment and left them in Davis' room.
 
 
 5
 Prior to this conversation, the police filled out an arrest slip, informally charging Davis with murder.[1] However, no one informed Davis that he was under arrest. The officers then contacted an assistant State's Attorney, who arrived at the station at about 4:00 p.m. After again being informed of his constitutional rights, Davis retold his story. Following this conversation, the State's Attorney phoned his supervisor who approved the request to charge Davis with murder, but instructed the attorney not to file the charges until after obtaining a written statement.
 
 
 6
 The State's Attorney returned with a court reporter, again read Davis his Miranda rights, and asked Davis to make a written statement. The petitioner responded: "I want to know what I'm charged with first." The State's Attorney replied:
 
 
 7
 At the moment, there are no charges that are placed against you.... At the moment, you are a witness, and we are having a conversation with you in connection with a robbery and homicide that occurred on December 31.
 
 
 8
 Davis reiterated his story, stating that Nino and Bob forced him to participate in the crime. After the statement was transcribed, the State's Attorney reread the account.[2] When doing so, the prosecutor failed to read the language warning that anything Davis said could be used against him in court. Davis signed each page of the written confession. He was then formally charged with the murder, robbery and burglary of Frank Collins.
 
 II. VOLUNTARINESS OF THE CONFESSIONS
 
 9
 Davis claims that he was deceived into waiving his Fifth Amendment right against self-incrimination, rendering his written confession involuntary. He claims that the State's Attorney induced him to confess by assuring him that he was a only witness although the State's Attorney had already received approval to file murder charges against him.
 
 
 10
 The Illinois Court of Appeals did not decide whether "the misstatements and omissions [made by the police and prosecutor] were intentional." People v. Davis, 142 Ill.App.3d 630, 637 (1st Dist.1986). In finding that Davis voluntarily waived his Fifth Amendment rights, the court concluded that "[a]ny deception which may have occurred was 'neither of a nature likely to produce an untrustworthy confession not so reprehensible as to be offensive to basic notions of fairness.' " Id. at 638 (quoting People v. Boerckel, 68 Ill.App.3d 103 (1980)).[3]
 
 
 11
 Whether a confession is given voluntarily "is a legal question requiring independent federal review." Arizona v. Fulminante, 111 S.Ct. 1246, 1252 (1991) (quoting Miller v. Fenton, 474 U.S. 104, 110 (1985)). We determine whether, under the totality of the circumstances, the statement was the result of physical or mental coercion. Id. at 1253. If it is determined that an involuntary confession was erroneously admitted, the court then must determine whether the admissions of the evidence was harmless beyond a reasonable doubt. Id. at 1257, 1265. The state carries the burden of demonstrating that the confession "did not contribute to [the] conviction." Id. at 1257.
 
 
 12
 On appeal, Davis only challenges the admission of his written statement. He does not contest the admission of his two oral confessions.[4] Our review of the trial transcripts indicates that testimony was received concerning the substance of the two oral statements, which did not significantly differ from the content of the written confession. Because evidence concerning the oral confessions was properly before the trial court, the admission of the written statement, if error at all, is harmless error. Thus, we need not decide whether the government improperly coerced Davis to waive his rights when he made the inculpatory written statement.
 
 
 13
 III. IMPROPER USE OF CO-DEFENDANT'S CONFESSION
 
 
 14
 Parker, Davis' co-defendant, made several statements to police investigators implicating Davis in the murder. The petitioner claims that, during closing argument, the prosecutor repeatedly referred to Parker's confession as evidence of his guilt. Thus, he concludes that prosecutorial misconduct deprived him of a fair trial. When a petitioner complains that the state violated his right to a fair trial, he must "show that the errors or irregularities of which he complains probably caused a miscarriage of justice, that is, the conviction of an innocent person." Thompkins v. Cohen, 965 F.2d 330, 333 (7th Cir.1992).
 
 
 15
 Davis' contention is not supported by the record. First, the trial court, both during the course of the trial and closing argument, repeatedly admonished the jury that these statements could only be used as evidence against Parker. In addition, although the prosecutor discussed Parker's confessions at length, he did so only when addressing the evidence against her. The attorney relied on Davis' own confessions, not mentioning Parker's statements, when reviewing the evidence of his guilt. Davis' assertions are simply unsupported.
 
 
 16
 For the foregoing reasons, the denial of Davis' petition for a writ of habeas corpus is
 
 
 17
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Before this time, the officers never told Davis that he was not under arrest or that he was free to leave. In short, at no time was Davis ever informed of his status by the police
 
 
 [2]
 Davis asked the statement to be read to him because he could not read very well
 
 
 [3]
 The district court concluded that because no formal charges had been filed, no deception occurred
 
 
 [4]
 In his petition before the district court, Davis claimed that both the oral and written statements should be suppressed because he was held for custodial interrogation without probable cause in violation of the Fourth Amendment. Davis does not appeal the adverse ruling on this claim. In addition, Davis never challenged the voluntariness of the oral statements