Rickey JENKINS, Appellant,

v.

STATE of Indiana, Appellee.

No. 55S00–9207–CR–602.

Supreme Court of Indiana.

Dec. 20, 1993.

Rehearing Denied March 1, 1994.

William Van Der Pol, Jr., McNutt, Hurt & Blue, Martinsville, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of one count of Murder, two counts of Felony Murder, one count of Rape, one count of Child Molesting, and was found to be a habitual offender. He was sentenced to a term of sixty (60) years on the murder conviction, which was enhanced by thirty (30) years due to the habitual offender finding. Appellant received a twenty (20) year consecutive sentence for the rape of the victim.

The facts are: On September 14, 1991, Jeanie Whitman, the 15–year–old victim in this case, and her friend, Michael Cloud, went to appellant's home. They rode with him when he took Delores McGarr home. Prior to leaving, appellant took Jeanie aside and said something to her. After that exchange, Jeanie told Aline Kingery, appellant's girlfriend, that her boyfriend was weird. During the trip, appellant allowed both Cloud and Jeanie to drive his car. Appellant suggested that Jeanie sit in his lap while Cloud drove the car. Jeanie initially refused but eventually complied with the request. When Cloud was driving, he turned around and saw appellant's hand on Jeanie's thigh.

On September 15, 1991, Jeanie spoke with her mother and insisted that she needed to go to appellant's home to tell Kingery something which she could not tell her mother. When Jeanie arrived at appellant's home, appellant and Kingery were preparing for bed. Jeanie left with her mother because she did not have the opportunity to speak privately with Kingery. Jeanie and her mother argued when Jeanie returned to the car. Jeanie then exited the car and returned to appellant's home.

After she arrived at their house, Jeanie tried to get appellant and Kingery to take her for a ride in their car. They refused to do so because it was late in the evening. Jeanie offered to buy a two-liter bottle of Pepsi for them if they would take her home.

At approximately 10:30 p.m., appellant agreed to give her a ride. They left without Kingery. Appellant returned to his house at approximately 12:00 to 12:30 a.m. and told Kingery that he had car trouble after dropping off Jeanie near her home. He also told Kingery to say that she had gone with him when he took Jeanie home. Kingery initially told that story due to threats made by appellant. However, when she realized that appellant had lied to her, and faced with the inconsistencies in their stories, she ultimately told the truth.

The next morning, the victim's body was found on the side of a gravel road in rural Morgan County. An autopsy found the cause of death to be a depressed skull fracture. Great force was required to inflict those wounds. There was a bruising pattern across the victim's chest and arm that appeared to be a tire tread pattern. Her injuries were consistent with being run over by a car. The results of the autopsy also revealed conditions consistent with sexual assault.

F.B.I. Special Agent Robert Coffin, a supervisor in the DNA Analysis Unit, testified about how the F.B.I. conducts its DNA testing. He explained that Rick Deeter, a trained lab technician, worked with him in conducting the tests in this case. Deeter performed the actual manipulation of the samples. Coffin conducted the statistical analysis of the DNA testing procedure which was done by Deeter.

Coffin testified that the results of the DNA testing showed that the semen on the victim's underwear was consistent with that of appellant but not with that of her boyfriend. He testified that one of the blood samples from appellant's car was consistent with the victim's blood, but not with that of appellant.

■ Appellant argues that he was denied the right to confront witnesses testifying against him because the lab technician did not testify at trial. He claims that he was unable to cross-examine Deeter regarding the methods used in the "hands on" portion of the testing.

■ Every defendant has the right to be confronted by his accusers and by wit-

nesses who will testify against him and has the right to cross-examine them. *Denson v. State* (1960), 240 Ind. 324, 163 N.E.2d 749. However, the right of confrontation is not absolute and must occasionally give way to considerations of public policy and necessities of the case. *Miller v. State* (1987), Ind., 517 N.E.2d 64. The failure of the State to call a competent witness does not deny a defendant his constitutional right. *Beverly v. State* (1989), Ind., 543 N.E.2d 1111. The State cannot be compelled to call witnesses at the instance of the accused. *Id.* Appellant has the burden of seeing that witnesses who may have aided in his defense are called. *Id.*

In *Reardon v. Manson* (2nd Cir.1986), 806 F.2d 39, *cert. denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509, the State called the supervisor of the toxicology laboratory to testify, but did not call the lab technician. Although the scientific data in that case did not involve DNA testing, the procedure was similar. The technician manipulated the samples under the supervisor's direction and followed the established protocols. A similar challenge was made in that case.

The court pointed out that only one of the testing procedures required a subjective evaluation by the technician. The other testing procedures were mechanically objective. The supervisor then drew his own conclusions regarding the testing information. The Court further noted that it was unlikely that a technician would have any independent recollection of the tests conducted by him. He likely would have to refresh his recollection by use of the laboratory notes which he made. These notes were used by the supervisor not only in reaching his conclusion but at trial during his testimony. The testimony from the technician would amount to generalizations concerning the laboratory practices and probabilities concerning the likelihood of error. The Court concluded that there would have been little use in making the technician available for cross-examination.

In the case at bar, we find the failure of the State to call the technician to testify at appellant's trial did not violate his right to confront witnesses testifying against him.

■ Appellant does not contest the chain of custody of the samples prior to the techni-

cian's possession. He does, however, challenge the chain of custody within the F.B.I. laboratory. He contends the absence of testimony by the technician constitutes a break in the chain of custody and that the technician's failure to testify deprived him of the opportunity to challenge the F.B.I. testing procedures.

■ The party offering the challenged evidence need only provide "reasonable assurance" that the evidence passed through various hands in an undisturbed condition. *Kennedy v. State* (1991), Ind., 578 N.E.2d 633. The proponent need only provide evidence that "strongly suggests" the exact whereabouts of the evidence at all times. *Id.* When appellant challenges the chain of custody, he must present evidence which does more than raise "a mere possibility" that the evidence was tampered with, altered, or substituted. *Id.* Therefore, a perfect chain of custody need not be established by the State. *Id.* Any gaps in the chain go to the weight given to the evidence and not to the admissibility of the evidence. *Id.*

Federal Rule of Evidence 901(a) provides that:

"the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Appellant does not claim that someone in the F.B.I. laboratory tampered with, altered, or caused a substitution in the samples in the case at bar. He argues that there was a mistake made by the technician during the testing of the samples. He produced two experts regarding the possibility of mistakes in the testing procedure. He claims this testimony satisfies the necessary showing of tampering with the evidence, thereby rendering the evidence inadmissible.

■ It was for the trier of fact to determine how much weight to give to the testing evidence in light of appellant's expert testimony regarding the alleged error. *Tiller v. State* (1989), Ind., 541 N.E.2d 885. Moreover, it is the role of the trier of fact to resolve conflicts in testimony. *Williams v.*

*State* (1982), Ind., 439 N.E.2d 1142. On appeal we will not reweigh the evidence nor will we reassess the credibility of witnesses. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280.

We have held that there is a presumption that public officials discharge their duties with due care. *Kennedy, supra.* Moreover, we have held that there is a presumption of regularity in the handling of exhibits by public officers. *Id.* We also have held that whether the actual techniques involved were followed goes to the weight given to the evidence and not to the admissibility of that evidence. *Davidson v. State* (1991), Ind., 580 N.E.2d 238.

■■■ The State called the supervisor to testify and the technician's notes were admitted in evidence under the business record exception to the hearsay rule. Appellant claims that the notes do not fall under this exception.

Assuming for the sake of argument that the laboratory notes do not fall under the business record exception to the hearsay rule, no error occurred here. An expert is allowed to base an opinion on facts or data that are not admissible in evidence if they are of the type reasonably relied upon by experts in the field. *McElroy v. State* (1992), Ind.App., 592 N.E.2d 726, *trans. denied; see* Ind.Rules of Evidence, Rule 703. The notes are made by a technician who follows established protocols during the testing procedure. Laboratory notes of that kind are used by every supervisor involved in DNA testing. Therefore, although the laboratory notes might have been inadmissible as hearsay, admission in the present case is harmless because of use by the expert witness.

■■■ Appellant contends the trial court erred in its interpretation of the term "results" as used in Ind.Code § 35–37–4–13. He argues that the trial court should have required expert testimony prior to allowing the statistical analysis of the results in evidence.

The statute provides:

"(a) As used in this section, "forensic DNA analysis" means an identification process in which the unique genetic code of an individual that is carried by the individual's deoxyribonucleic acid (DNA) is compared to genetic codes carried in DNA found in bodily substance samples obtained by a law enforcement agency in the exercise of the law enforcement agency's investigative function.

(b) In a criminal trial or hearing, the results of forensic DNA analysis are admissible in evidence without antecedent expert testimony that forensic DNA analysis provides a trustworthy and reliable method of identifying characteristics in an individual's genetic material."

Appellant argues that Special Agent Coffin should not have been allowed to testify to the statistical probability of a coincidental match. He claims "The Product Rule," which was used by the F.B.I. in this case, is not generally accepted within the scientific community. The defense presented reports and testimony by experts who challenged the accuracy of this quantitative evidence. Appellant cites the case of *Commonwealth v. Curnin* (1991), 409 Mass. 218, 565 N.E.2d 440. The convictions in that case were reversed on appeal based upon the lack of evidence showing general acceptance or inherent rationality of the quantitative analysis.

In *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 900–01, we stated:

"There are doubtless many formulas and principles which experts use ... to arrive at their ultimate opinions. The determination of which factors, formulas or calculations are necessary, either singly or in conjunction with each other, to form an expert opinion is within the knowledge and judgment of the expert and, again, is a subject which can be approached and examined in the cross-examination or by bringing forward other expert witnesses."

Appellant did precisely that in the case at bar. The trial court did not err in the admission of this evidence.

■■■ Appellant claims the trial court erred by allowing serology test results in evidence. He claims the deviations from protocol which occurred were of such a nature that the testing procedure as it was actually conducted was an entirely different

test. He argues that the results should not have been admitted absent a showing that the new testing procedure was generally accepted within the scientific community.

Paul Misner, an Indiana State Police serologist, performed the serology tests. He testified that he had the authority to modify existing procedures to suit the needs of the laboratory. Defense counsel challenged the deviations from laboratory protocols which occurred during the testing. Misner testified that in each instance the deviations would not affect the test results.

■■■ The deviations from protocol were discussed fully in the presence of the jury during cross-examination. Conflicting opinions between experts as to the validity of the testing procedures should be brought out during cross-examination. *Orr v. State* (1984), Ind.App., 472 N.E.2d 627. The final analysis is left in the hands of the jury. *Id.* There was no error in the admission of this testimony.

■■■ Appellant claims the trial court erred by applying the Rape Shield Statute, Ind.Code § 35–37–4–4, *et seq.* He claims the statute should not apply when the victim is deceased. The trial court allowed testimony from the victim's boyfriend regarding his sexual activity with the victim two days prior to the murder. Appellant claims that application of the statute to the present case was prejudicial in that he was prevented from introducing evidence to explain other sources of the semen and that the victim's state of dress might be consistent with consensual intercourse.

Appellant's argument fails for several reasons. First, appellant was allowed to question Charles Matthews, the victim's boyfriend, about their sexual activity immediately prior to the occurrence of the crimes. Secondly, the Rape Shield Statute specifically prohibits introduction of evidence of the victim's sexual activity with other persons. Appellant was attempting to show, although there was no evidence of prior consensual activity between the victim and appellant, that when the victim engaged in any consensual sexual activity she frequently did so while partially clothed. The inference he

hoped to leave with the jury was that her state of dress indicated consent rather than the use of force.

The trial court correctly applied the Rape Shield Statute in the present case. The statute makes no exception if the victim is deceased. Appellant is correct that one of the purposes of the statute is to protect living victims and their families from the embarrassment of public discussion of the victim's prior sexual activity. The goal is to promote reporting of the crime. If the statute is not applied to victims who ultimately are murdered, then perpetrators of sex crimes will be encouraged to kill their victims, thus enabling them to defend the charges through exploitation of evidence of the victim's prior sexual activity.

Moreover, appellant was able to present evidence of the victim's sexual activity two days prior to the murder. Therefore, he was not prejudiced by the trial court's decision. Any further discussion of the victim's sexual activity would have been irrelevant and prejudicial. The trial court did not err.

Appellant argues he was denied the opportunity to present evidence to support his theory that someone else committed the rape. He claims that evidence of the victim's prior sexual activity would have helped his defense and would be admissible under Ind. Code § 35–37–4–4(b).

However, as stated above, the only activity which would be relevant to the charges against appellant involved the sexual activity two days prior to the murder. The trial court allowed this into evidence. Identity of the perpetrator was an issue. The State brought in DNA evidence identifying appellant as the perpetrator. The trial court did not err.

■■■ Appellant claims the trial court erred by allowing in evidence statements which he made to the police. Appellant claims the statements were not made voluntarily and were taken after he asserted his right to remain silent.

*Miranda* safeguards apply only in the case of custodial interrogation. *Hughes v. State* (1989), Ind., 546 N.E.2d 1203. Warnings are not required prior to general on-the-scene

questioning related to obtaining facts of the crime. *Id.* *Miranda* applies to cases of interrogation, not volunteered statements. *Pasco v. State* (1990), Ind., 563 N.E.2d 587. Statements which are volunteered are admissible regardless of whether an accused is in custody or whether he has been Mirandized. *Robey v. State* (1990), Ind., 555 N.E.2d 145.

In *Johnson v. State* (1979), 269 Ind. 370, 377, 380 N.E.2d 1236, 1240 we stated:

"The term 'interrogation' has been defined as a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements. [Citation omitted.] Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation. [Citation omitted.] Rather, it is necessary to view the statement in the context in which it was made. If, after having done so, it does not appear that the purpose of the remark was to obtain a confession from the accused, *Miranda* is not triggered and it is not necessary that the accused first be advised of his rights."

When appellant arrived home from work on the day the victim's body was found, the police already were interviewing Aline Kingery. The police had determined that appellant and Kingery were the last people known to have seen the victim alive. The officers noted discrepancies between appellant's story and Kingery's later repudiated story. Observation of the tread of the front tire of appellant's car seemed to match the tire marks which appeared on the victim's body. An officer observed what appeared to be bloodstains on appellant's car. Trooper Lang instructed Morgan County Sheriff's Deputy Betts to Mirandize appellant, which he did. Betts questioned appellant but after a short time appellant asserted his right to remain silent. No further questioning by either officer ensued.

The officers then asked Kingery and her mother for consent to search the premises. The officers had determined that appellant lived with Kingery and her mother in the home which they rented. Appellant insisted that he accompany the officers while they conducted the search. A written consent form was signed by all three individuals and a search of the home was conducted in appellant's presence.

Appellant was not handcuffed as he rode in the unlocked back seat of the squad car while the officers went to find Kingery's brother, James, to confirm appellant's story. During this trip, appellant provided directions to locations where James Kingery could be found. Testimony adduced at trial showed that when appellant began making substantive statements and asking questions, he was informed that he was not under arrest, but was reminded that he had asserted his right to remain silent.

Appellant then stated that he would talk to the officers because he had nothing to hide. He repeated the same story he previously had told. James Kingery's story did not support appellant's story. Assuming that appellant was in custody from the point in time when the officers determined that there were some serious discrepancies in the stories told by appellant and Kingery, the officers scrupulously honored appellant's request to remain silent. They did not question appellant. When appellant initiated conversation by asking questions, the officers reminded him that he previously had asserted his right to remain silent. There is no evidence in the record which indicates that appellant was in any way coerced or threatened by the officers.

Appellant cites the dissenting opinion in *Moore v. State* (1986), Ind., 498 N.E.2d 1, to support his position. In *Moore,* we held that when an accused invokes his right to remain silent the police must "scrupulously honor" that right. The burden is on the State to prove that in fact was done. Unlike *Moore,* appellant initiated further discussion of a substantive nature with the police. The officers reminded him of the fact he previously had invoked his right to remain silent. Appellant went on to say that he would talk to them because he had nothing to hide. Therefore, the statement made to the police was voluntary. The trial court did not err.

Appellant contends the trial court erred by refusing to read his Tendered Instruction

No. 20. The tendered instruction is as follows:

"It is a complete defense to the crime of Child Molesting (Count V), that the accused person reasonably believed that Jeanie Whitman was sixteen (16) years of age or older at the time of the conduct. The State of Indiana must prove beyond a reasonable doubt that the Defendant did not reasonably believe that Jeanie Whitman was sixteen (16) years of age or older. If you find that the State of Indiana did not meet it's burden of proof on the offense of Child Molesting (Count V) then you must find the Defendant, Rickey Jenkins, not guilty."

The trial court gave Final Instruction No. 19 which is as follows:

"If you find that the Defendant has raised the issue of the victim's age for Count III and Count V by some means, it is a defense that the accused person reasonably believed that the child was sixteen (16) yars [sic] of age or older at the time of the occurrence.

If you find the Defendant has raised the issue, the State has the burden of disproving this defense beyond a reasonable doubt."

■ Upon review of an issue concerning the giving or refusal of an instruction, we consider whether the tendered instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463. The trial court's instruction is a correct statement of the law addressed in the tendered instruction. The trial court's instruction goes on to state that the defense also applied to Count III. The trial court did not err in refusing the tendered instruction.

■ Appellant contends the trial court erred by allowing Officer Robert Garner to testify as an expert witness in the area of analysis of tire marks left in gravel. Appellant challenges Garner's qualification as an expert in that field.

■ We have held that a witness need demonstrate no precise quantum of knowledge in order to testify as an expert. *White v. State* (1989), Ind., 547 N.E.2d 831. A showing of sufficient skill, knowledge, or experience in the field is all that is required to allow a trial court to find that a witness' opinion or inference will aid the trier of fact in the search for the truth. *Id.* The trial court has broad discretion in determining qualifications of an expert witness. *Id.* We will reverse the trial court's determination only for an abuse of that discretion. *Id.*

Officer Garner testified that there were many gravel roads in Morgan County and that he had processed fifteen homicide crime scenes in seven years. He stated he had done several tests on gravel roads. He further testified that there are certain objective factors present which distinguish acceleration marks from skid marks and stated those factors.

■ We find no abuse of discretion in allowing Officer Garner to testify as an expert and state his opinions or conclusions. Morgan County Sheriff's Deputy Larry Sanders testified that when he secured the crime scene he observed tire marks which appeared to be the result of a speeding vehicle which fishtailed in the gravel. There was no objection to that testimony. Officer Garner testified regarding the tire marks to which an objection was made and overruled. Two subsequent witnesses testified without objection to the characteristics of the tire marks in the gravel.

■ When appellant fails to object to allegedly inadmissible evidence the first time it is offered, no error is preserved. *Alexander v. State* (1983), Ind., 449 N.E.2d 1068. Further, in order to preserve the allegation of error, appellant must object each time the allegedly inadmissible evidence is offered. *Bonds v. State* (1982), Ind., 436 N.E.2d 295. This appellant did not do. The trial court did not err.

■ Appellant claims the trial court erred by refusing to admit a newspaper advertisement into evidence. Appellant argues the advertisement was relevant because it supported his assertion that he reasonably believed the victim was over sixteen years of

age. The advertisement was for an R-rated movie "Freddy's Dead."

Kingery testified that the victim and her boyfriend told appellant and Kingery that they were going to Greenwood, Indiana to see the movie "Freddy's Dead." The boyfriend also testified that the victim wanted to see that movie. Appellant then tried to introduce in evidence the newspaper advertisement.

Appellant argued that it was relevant to support the reasonableness of his belief that the victim was over the age of sixteen, which would have been a defense to the child molestation count. The State's objections based on relevance and hearsay were sustained.

■ Evidence is relevant and admissible if it tends to prove or disprove a material fact or shed any light on guilt or innocence of the accused. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077.

Assuming for the sake of argument that the trial court was in error by refusing to admit the advertisement, appellant has failed to show how he was prejudiced by the ruling. Witnesses testified that the victim had talked about going to see the movie at Greenwood and that it was an R-rated movie requiring a minimum age of seventeen to be able to view it. Therefore, the content of the advertisement and the age requirement were already in evidence through the testimony of those witnesses. The trial court did not err.

■ Appellant claims the trial court erred by refusing to admit a letter from the Morgan County Prosecutor to the F.B.I. In the letter, the Morgan County Prosecutor expressed his hope that the results of the tests conducted by the F.B.I. would provide a further link between appellant and the crimes charged.

■ We have held that in criminal litigation, protection must be extended to the attorneys' work product. *State ex rel. Keaton v. Cir. Ct. of Rush Cty.* (1985), Ind., 475 N.E.2d 1146. The work product privilege is a qualified one and can be waived. *Id.* What constitutes a waiver of the privilege depends upon the circumstances. *Id.* We have held that even where documents, e.g.,

police reports, are produced in a criminal trial context, this does not render them admissible if there is not an explicit or implicit waiver of the privilege. *Id.*

In the case at bar, the prosecuting attorney did not intend to waive the work-product privilege. The letter was inadvertently supplied by the F.B.I. to defense counsel. In the absence of explicit or implicit waiver, the trial court's decision to bar admission of the letter was proper. Further, the trial court suggested, when ruling on the admissibility of the letter, that certain portions of the letter might be admissible, while portions containing the prosecuting attorney's thought processes were not admissible. Appellant had as an option redaction of the letter. Appellant chose not to do this. The trial court did not err.

■ Appellant contends the trial court erred when hair samples and test results thereon were allowed in evidence. The trial court had extended the original discovery deadline by one day until March 2, 1992 in order to allow the State to collect the hair sample. The day after the extended deadline the State collected the sample and sent it to the State Police for analysis. The results of the test were made available to the defendant via deposition ten days later. Appellant's objection on the basis that the discovery date had expired was overruled. The tests showed that the pubic hair found in the victim's underwear was not that of her boyfriend.

■ One of the strongest presumptions on appeal is that the trial court acted properly. *Myers v. Myers* (1990), Ind., 560 N.E.2d 39. An abuse of discretion by the trial court occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Trial courts are vested with broad discretion where discovery is concerned. *Hicks v. State* (1989), Ind., 544 N.E.2d 500. Absent a clear violation of that broad discretion, and a showing of prejudice, a trial court's decisions will not be disturbed. *Armstrong v. State* (1986), Ind., 499 N.E.2d 189.

Appellant has failed to show how he was prejudiced by the trial court's decision to allow the evidence. The results were provided to appellant eliminating the element of surprise at trial. Further, the evidence tended to provide further facts for the jury to consider regarding the identity of the person who committed rape or child molestation. We cannot say it was error for the trial court to admit relevant evidence which aided the trier of fact in its determination. The trial court did not err.

Appellant argues the trial court erred by allowing a non-disclosed rebuttal expert witness to testify for the State. In its case-in-chief, the State presented the testimony of Special Agent Robert Coffin regarding DNA testing procedures and reliability. The defense presented the videotaped deposition of an expert witness, Dr. Libby, to challenge the reliability of DNA testing procedures. The State did not disclose the name of a rebuttal expert witness, Dr. Edenberg, until 45 minutes before his testimony at trial. Appellant's objection to the expert testimony was overruled.

■■■ We have held that the State is under no obligation to provide the defense with a list of its rebuttal witnesses. *Smith v. State* (1990), Ind., 553 N.E.2d 832. There is no right to discovery of rebuttal witnesses. *Thompkins v. State* (1978), 270 Ind. 163, 383 N.E.2d 347. Therefore, no reversible error occurs when a trial court declines to order such discovery. *Id.*

■■■ Appellant argues that our recent opinion *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, disposes of this issue in his favor. While it is true that we held in *McCullough* that the nondisclosure of a rebuttal expert witness is excused only when that witness is unknown and unanticipated, that rule must be applied prospectively. This was not the law at the time the present case was tried. Therefore, the court did not err.

■■■ We note the trial court has wide discretion in ruling on violations of a discovery order, and we will not reverse the determination absent an abuse of discretion. *Martin v. State* (1989), Ind., 535 N.E.2d 493.

Exclusion of evidence as a discovery abuse sanction is proper only where there is a showing that the State engaged in deliberate or other reprehensible conduct which prohibits the defendant from receiving a fair trial. *Id.*

There is no evidence in the record nor does appellant argue that the nondisclosure was an intentional act of bad faith on the part of the State. Appellant failed to move for a continuance when he did discover that the expert was going to testify during rebuttal. We have held that failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order. *Id.* The trial court did not err.

■■■ Appellant claims the evidence is insufficient to support the convictions. On review of a question of sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of the witnesses. *Miller v. State* (1990), Ind., 563 N.E.2d 578. We will consider only that evidence which supports the verdicts and all reasonable inferences to be drawn therefrom. *Id.* The findings made by the trier of fact will not be disturbed where there is substantial evidence of probative value to support the conviction. *Id.*

■■■ The State presented DNA evidence from which the jury could find appellant was the perpetrator of the crime. The semen from the stain on the victim's underwear had the same characteristics as that of appellant. There was evidence that appellant had scratches on his upper thighs at the time of his arrest. There also was testimony which tended to suggest that appellant had expressed a sexual interest in the victim prior to the commission of the crimes. Although appellant presented contradictory evidence it was for the trier of fact to determine which version of the facts to believe. The evidence is sufficient to support the rape conviction.

■■■ Appellant also challenges the sufficiency of the evidence on the murder conviction. There was evidence that appellant was the last person to see the victim alive. Ap-

pellant threatened his girlfriend in order to get her to cooperate with the story he told the police. Appellant told the police that James Kingery would corroborate his story; however, Kingery's statements did not support appellant's statement of the events. The bruising pattern on the victim's body resembled tire tread marks and the tire tread matched that of the tires on appellant's car. The victim's blood matched blood which was found on the underside of appellant's car. Appellant presented his version of the events. At that point, the jury was free to believe either theory presented. The evidence is sufficient to support the conviction.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.