64 F.3d 665
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Larry D. SMITH, Petitioner-Appellant,
v.
Daniel R. McBRIDE, Respondent-Appellee.
 No. 93-3431.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1995.*
Decided Aug. 17, 1995.
Rehearing Denied Oct. 20, 1995.
 
 Before POSNER, Chief Judge, and PELL and CUDAHY, Circuit Judges.
 
 ORDER
 
 1
 Larry D. Smith appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Smith makes various claims arising from his 1990 conviction for attempted burglary in Indiana. We affirm.
 
 I. Background
 
 2
 At 12:30 a.m. on June 30, 1990, burglar alarms were triggered at Carter Lumber, located in rural Wabash County, Indiana. Local police arrived and were soon joined by the lumber yard's manager. The police and manager inspected the grounds and found that a door had been pried open, the outside alarm boxes had been pried from the wall, and the telephone wires had been cut. The police found pry-bars, a sledge-hammer, and a multi-meter electronic device nearby. Inside, drawers and cabinets had been opened and a twenty-dollar bill and radio were missing. The chainlink fence surrounding the lumber yard had been cut in two places, one apparently an entrance with footprints leading into the yard and the other an exit with footprints leading away from the yard.
 
 
 3
 After the inspection, one of the police officers returned to his patrol. Driving in the vicinity of the lumber yard, he noticed a car with yellow fog-lights with apparently two occupants. Later that night he saw the car again, this time with three occupants. The officer followed the car and, after it ran a stop sign, he pulled the car over.
 
 
 4
 When the car stopped, a man clutching a satchel, who turned out to be Larry Smith, bolted from the car and disappeared into the bushes at the side of the road. The officer radioed for help, which soon arrived. The police found Smith crouched down and hiding in the bushes and arrested him for fleeing a police officer. Incident to the arrest, the police made a custodial search of Smith and found a single glove and a flashlight.
 
 
 5
 The next morning, the police returned to the bushes where Smith had hidden and found the satchel, which contained a two-way radio and a loaded handgun. The police also returned to the lumber yard where they made plaster casts of the footprints and found five threads caught on the chainlink fence where it had been cut open.
 
 
 6
 Smith was charged with attempted burglary and went to trial. At trial, the foregoing evidence was introduced, although Smith objected to the introduction of the contents of the satchel. Also, an electronics store employee identified Smith from a picture line-up and testified that he had sold Smith a two-way radio, a multi-meter tester, and other products three days prior to the break-in and Smith's arrest. A store receipt was produced that showed that those items had been sold to an individual named Larry Smith on that date. A foot-print expert testified that Smith's workboots could have made the print at the lumber yard, although the print was not clear enough for a definitive match. A State Police Laboratory expert testified that of the five threads found on the chain link fence, four of them could have come from Smith's black cotton t-shirt. The expert also testified that Smith's t-shirt had a hole in it when the lab received it.
 
 
 7
 The jury convicted Smith of attempted burglary and Smith was sentenced to eight years' imprisonment. Smith appealed, claiming the evidence was insufficient to place him at the scene of the crime; it was error to introduce the loaded handgun into evidence; and that his trial counsel had been ineffective. The Indiana Court of Appeals for the Second District affirmed Smith's conviction. (No. 85A02-9110-CR-446, Oct. 7, 1992). The court held that the evidence was sufficient and that Smith's counsel was reasonably effective. However, the court found that it was error to allow the handgun into evidence because it was irrelevant to the charged crime of attempted burglary. But, the court further held that the error was harmless because there was no substantial likelihood that the evidence contributed to the conviction. Smith was denied leave to appeal to the Indiana Supreme Court.
 
 
 8
 Smith then petitioned the district court for a writ of habeas corpus, which was denied. Smith appeals, claiming that the evidence was insufficient; the handgun evidence was so prejudicial that it denied him a fair trial; trial counsel was ineffective; the district court erred in not granting Smith a default judgment; and the district court erred in not granting Smith an evidentiary hearing.
 
 II. Analysis
 
 9
 Before a federal court may review the merits of a claim raised by a state prisoner in a petition for a writ of habeas corpus, the petitioner must fulfill the procedural requirements set by state law for seeking judicial review in the state courts. Lemons v. O'Sullivan, 1995 U.S.App. LEXIS 9792 at * 4 (7th Cir. April 28, 1995). By presenting his claims to the Indiana Supreme Court on direct appeal, Smith has preserved the claims for federal review.
 
 A. Sufficiency of the Evidence
 
 10
 Smith claims that there was insufficient evidence to sustain his conviction. Specifically, Smith contends that the evidence was insufficient to place him at the scene of the attempted burglary.
 
 
 11
 "The relevant inquiry for a federal habeas court reviewing a sufficiency of the evidence claim is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Lemons at * 16-17 (quoting Jackson v. Virginia, 443 U.S. 307, 318 (1979)). In Smith's case, there was sufficient evidence. Fibers from Smith's black t-shirt matched four of those found on the chain-link fence at the lumber yard. The tread from Smith's boots, although common, matched the footprints made at the lumber yard. A multi-meter tester found at the yard matched one that had been purchased by Smith three days before at a local store. Smith fled and hid in the bushes when a police officer stopped the car in which he was riding. Although none of this evidence directly proves that Smith was at the lumber yard that night, together it is sufficient for a rational trier of fact to conclude that Smith had attempted to burglarize Carter Lumber.
 
 B. Prejudicial Effect of the Handgun
 
 12
 The Indiana trial court allowed the contents of the satchel Smith was carrying that night to be entered into evidence, including a loaded handgun. The Indiana Court of Appeals agreed with Smith that this was error, for the handgun was irrelevant to the charged crime, but held that the error was harmless. Smith argues on this appeal that the error was not harmless but prejudiced the jury to such a degree that he was denied a fair trial.
 
 
 13
 The standard of review for a claim of an unfair trial is as follows:
 
 
 14
 [G]eneral harmless-error analysis does not come into play when the only federal right at issue is the general right to a fair trial. Instead, 'to prevail on this ground a defendant must show that the errors or irregularities of which he complains probably caused a miscarriage of justice, that is, the conviction of an innocent person.'
 
 
 15
 Gomez v. Ahitow, 29 F.3d 1128, 1139 (7th Cir.1994) (quoting Thompkins v. Cohen, 965 F.2d 330, 334-35 (7th Cir.1992)).
 
 
 16
 Although Smith claims he is innocent, there is much evidence to the contrary.[1] Additionally, the handgun was introduced merely as one in a series of items recovered from Smith and was unmentioned in the prosecution's closing arguments. We cannot say that the prejudicial effect of introducing the handgun into evidence caused a miscarriage of justice.[2]
 
 C. Ineffective Assistance of Trial Counsel
 
 17
 Smith claims that trial counsel was constitutionally deficient. To sustain such a claim, Smith must satisfy the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Smith must show that his counsel's representation fell below an objective standard of reasonableness. Id. at 690. To do this, Smith "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. Second, Smith must show that actual prejudice occurred as a result of his counsel's deficient performance. Id. at 694.
 
 
 18
 In support of his claim, Smith argues that one of the police officers committed perjury and that Smith's initial arrest for fleeing a police officer was invalid. However, these allegations do not identify the acts or omissions of counsel that would constitute deficient performance. If Smith is implying that counsel should have objected to various portions of the testimony, we have examined the record and conclude that Smith's counsel made many objections throughout the trial and provided Smith with competent representation. We conclude that Smith did not receive ineffective assistance of counsel.
 
 D. Final Matters
 
 19
 Smith claims that the district court erred in not granting him a default judgment because the state was late in responding to his petition.[2] Smith also claims that the district court should have held an evidentiary hearing on his claims.
 
 
 20
 With respect to Smith's motion for a default judgment:
 
 
 21
 Releasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction for the wrong of failing to file a timely motion for an extension of time. This thinking informs the principle that default judgment is disfavored in habeas corpus cases.
 
 
 22
 Lemons at * 18-19 (quoting Bleitner v. Welborn, 15 F.3d 652, 653 (7th Cir.1994)). Thus, we find no abuse of discretion in the district court's decision to deny Smith's motion.
 
 
 23
 "An evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court." Matta-Ballesteros v. Henman, 896 F.2d 255, 258 (7th Cir.1990) (quoting Jeter v. Keohane, 739 F.2d 257, 258 n. 1 (7th Cir.1984)). Smith contends that he requires a hearing to expand upon his claim of ineffective assistance of counsel. However, Smith does not state what additional facts he hopes to elicit at an evidentiary hearing that would bolster his constitutional claim. Indeed, the full record of Smith's state trial is before the court. Examining this record and Smith's contentions, we are not convinced that Smith received ineffective assistance of counsel. Thus, an evidentiary hearing is not necessary.
 
 III. Conclusion
 
 24
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Despite Smith's assertions, a petitioner's claim of "actual innocence" does not entitle him to a more demanding standard of review once a federal court has decided to hear the merits of his claim. See Milone v. Camp, 22 F.3d 693, 699-700 (7th Cir.1994)
 
 
 [2]
 Smith directs our attention to O'Neal v. McAninch, 115 S.Ct. 992 (1995) (where "grave doubt" exists as to whether constitutional trial error affected jury, the judge must treat the error as if it did so). Although we ultimately hold that no constitutional error occurred, we do not, contrary to Smith's contentions, have grave doubt as to whether the introduction of the handgun affected the jury
 
 
 [2]
 Smith filed his petition on January 22, 1993. The state moved for an extension of time to reply, which was granted, followed by two more such motions. The state answered Smith's petition on July 2, 1993, 21 days after the deadline imposed by the district court in the order granting the state's third motion for an extension of time