2017 PA Super 9

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PATRICK SHAWN MCCAMEY, | |
| Appellant | No. 321 WDA 2016 |

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001529-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,[*] JJ.

OPINION BY SHOGAN, J.: **FILED JANUARY 13, 2017**

Appellant, Patrick Shawn McCamey, appeals from the judgment of sentence entered on January 28, 2016, in the Mercer County Court of Common Pleas following the trial court's denial of a motion for a mistrial. We affirm the order denying Appellant's motion for a mistrial; however, after reviewing the legality of the sentence imposed, we are constrained to vacate Appellant's judgment of sentence and remand for resentencing.

The record reflects that on the afternoon of September 28, 2014, Pennsylvania State Police Trooper Timothy Callahan responded to a report of a suspicious death.  N.T., 11/12/15, at 58.  The report led him to a mobile home near the intersection of Route 58 and Irishtown Road in Mercer

---

[*]  Retired Senior Judge assigned to the Superior Court.

County. *Id*. When Trooper Callahan arrived, there were other police officers and ambulance personnel at the scene. *Id*. at 59. Trooper Callahan approached Trooper James Mason and Corporal James Powell of the Pennsylvania State Police, and at this point he saw the deceased. *Id*. The deceased individual was identified as Michael Johns, and his death was a result of asphyxiation caused by dual components of strangulation and smothering. *Id*. at 37, 75, 99.

The investigation into Mr. Johns's death led the state police to Appellant. N.T., 11/16/15, at 25. When Trooper Chris Birckbichler questioned Appellant, he informed Appellant of his *Miranda*[1] rights, and Appellant signed a form acknowledging that he understood them. *Id*. at 28. Appellant provided Trooper Birckbichler inconsistent versions of the events of the day that Mr. Johns was killed. *Id*. at 37. However, Appellant did inform Trooper Birckbichler that he was at Mr. Johns's home, and he wanted to buy drugs from the victim. *Id*. There was a struggle between the two men, and Appellant bled on the floor of the home after the victim stabbed him during the struggle. N.T., 11/12/15, at 115. Appellant obtained Comet cleanser and poured it on the blood so that his DNA could not be discovered. N.T., 11/16/15, at 37.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Commonwealth charged Appellant with murder, alleging that Appellant and his cohort, Ryan Bowers, killed Mr. Johns while engaged in both robbing Mr. Johns and burglarizing his home. Criminal Information, 12/8/14, at unnumbered 1. Specifically, the Commonwealth charged Appellant with second-degree murder (robbery), second-degree murder (burglary), third-degree murder, robbery, conspiracy (robbery), burglary, and conspiracy (burglary). *Id*. at unnumbered 1-4.

A jury trial began on November 12, 2015. On the third day of the trial, Monday, November 16, 2015, Juror Number Three returned from the lunch break and informed the trial court's tipstaff that an unknown individual made a comment to her in the hallway. N.T., 11/16/15, at 45. Juror Number Three also mentioned this extraneous comment to the other jurors. *Id*. at 46. The trial judge questioned the jurors individually about the statement made to Juror Number Three and inquired whether the jurors could remain impartial. *Id*. at 45-68. Satisfied that the jurors were not tainted and remained capable of reaching a true verdict, the trial court denied Appellant's motion for a mistrial. *Id*. at 71.

Appellant was found guilty of all charges on November 17, 2015. On January 28, 2016, the trial court sentenced Appellant as follows: life imprisonment for second-degree murder (robbery); life imprisonment for second-degree murder (burglary); ten to twenty years of imprisonment for third-degree murder; and five to twenty years of imprisonment for

J-S83022-16

conspiracy (robbery). The conspiracy (burglary) merged with conspiracy (robbery), and robbery and burglary merged with the second-degree murder convictions. All sentences were ordered to run concurrently.

On February 26, 2016, Appellant filed a timely notice of appeal to this Court. Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue for this Court's consideration:

> 1. Whether the Trial Court abused its discretion in denying the Appellant's motion for a mistrial relating to misconduct that occurred to the jury panel during trial?

Appellant's Brief at 4 (*verbatim*).

We review Appellant's claim of error bearing in mind the following principles:

> A defendant has the right to have his or her case heard by a fair, impartial, and unbiased jury and *ex parte* contact between jurors and witnesses is viewed with disfavor. ***Commonwealth v. Brown***, 567 Pa. 272, 786 A.2d 961, 972 (2001). There is, however, no *per se* rule in this Commonwealth requiring a mistrial anytime there is improper or inadvertent contact between a juror and a witness. ***See Commonwealth v. Mosley***, 535 Pa. 549, 637 A.2d 246, 249 (1993) (declining to adopt *per se* rule which would require disqualification of juror anytime there is *ex parte* contact between that juror and witness). Whether such contact warrants a mistrial is a matter addressed primarily to the discretion of the trial court. ***Brown***, 786 A.2d at 972 (citation omitted). A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to have deprived the moving party of a fair and impartial trial. ***Commonwealth v. Fletcher***, 561 Pa. 266, 750 A.2d 261, 282 (2000) (citation omitted).

***Commonwealth v. Tharp***, 830 A.2d 519, 532-533 (Pa. 2003).[2]

Additionally, the burden is on the party claiming prejudice. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1115 (Pa. 2012).

The trial court addressed this issue as follows:

> Appellant contends that a juror was approached by individuals outside of the Mercer County District Attorney's Office (which shares a common hallway with access to the jury room) who requested that the juror find Appellant guilty. Further, Appellant contends that the juror in question reported this conduct to a tipstaff in the presence of the entire jury panel, which allegedly tainted the panel.
>
> Juror No. 3 was identified by tipstaffs as reporting to them a brief encounter from three men outside the District Attorney's Office as she passed them in the hallway, and one of the men suggested she remember to find McCamey guilty. See Trial Transcript, Vol. II, Page 45. The Court had the following colloquy with Juror No. 3:
>
> THE COURT: Your name, please?
>
> JUROR NO. 3: [Juror No. 3].
>
> THE COURT: [Juror No. 3], you apparently reported to a tipstaff that somebody said something to you. So when did that occur?
>
> JUROR NO. 3: I was coming back from lunch. It was probably about 1:00 o'clock, and I was in the hallway out just across from the District Attorney's Office, and there were three men, one was standing with his back toward the office, and the other two were seated on the bench and they were having a

---

[2] While ***Tharp*** refers to a juror's *ex parte* communication with a witness, the same considerations apply when the potentially prejudicial contact is between a juror and a person other than a witness. ***Mosley***, 637 A.2d at 248.

conversation. So I said before I went between them, I said, "Excuse me." And the guy says, "Oh, you are excused. Just remember, guilty, guilty, guilty."

THE COURT: And do you recognize any of those men?

JUROR NO. 3: I really didn't even look at them. I kept going straight ahead, never acknowledged that he said that to me.

THE COURT: Did you recognize the voice as any witness who has testified?

JUROR NO. 3: No, I did not.

THE COURT: So you don't know if the person was connected with this case at all?

JUROR NO. 3: I do not. No.

JUROR NO. 3: Did you mention this to any other juror?

JUROR NO. 3: I – I mentioned it – after I told the tipstaff, after I told her, the rest – rest of them in the – in the jury room heard me, uh-huh.

THE COURT: Say that again?

JUROR NO. 3: The rest of the jurors in the jury room heard me tell the tipstaff that.

THE COURT: What you have just mentioned, you mean?

JUROR NO. 3: Yes, uh-huh.

THE COURT: [W]ill that influence you in any way in reaching a verdict in this case?

JUROR NO. 3: Not at all.

THE COURT: Are you still able to keep an open mind and decide this case based upon the evidence, which is not complete yet, and the law that the Court gives to you?

JUROR NO. 3: I am.

THE COURT: Any follow-up questions, Ms. Odem?

MS. ODEM: No, Your Honor.

THE COURT: Mr. Hetrick.

MR. HETRICK: No, Your Honor.

THE COURT: Thank you, [Juror No. 3]. You may go back into the jury room.

JUROR NO. 3: Thank you.

Juror No. 3 claimed she was able to keep an open mind and decide the case based on the evidence. *Id*. at 46. At the request of Defense Counsel, this Court then proceeded to interview individually and privately each juror and alternate juror to determine what they heard, if anything, and whether they could continue to be fair and impartial throughout the trial. *Id*. at 48-70. No juror or alternate juror was able to identify the person who made the suggestion to Juror No. 3. Assistant District Attorney Odem disclosed that the three individuals involved in the conduct with Juror No. 3 were victims in an unrelated case. *Id*. at 70. After the individual interviews, Defense Counsel orally moved for a mistrial on the basis of Juror No. 3's mentioning the suggestion of guilt in front of the entire jury panel. *Id*.

This Court concluded that there was no factual basis for a mistrial. *Id*. at 71. Even though Juror No. 3 spoke of an unknown individual suggesting she find the Appellant guilty, the jurors and alternates were examined individually and found to be of a fair and impartial mind. *Id*. Therefore, this Court determined there was no undue influence that compromised the jury and denied the motion for mistrial.

Trial Court Opinion, 4/5/16, at 2-4 (brackets in original).

After review, we are satisfied that the trial court appropriately responded to this *ex parte* communication between a member of the public and Juror Number Three by questioning each juror and alternate juror on the record to determine whether the jury could remain impartial. Moreover, we discern no abuse of discretion in the trial court's conclusion that despite the *ex parte* communication, Appellant was not deprived of a fair and impartial trial. **Tharp**, 830 A.2d at 533. Accordingly, a mistrial was not warranted.

Before we conclude our disposition of this appeal, however, we discern an issue concerning double jeopardy and merger, and we note that these principles implicate the legality of Appellant's sentence. **Commonwealth v. Andrews**, 768 A.2d 309, 313 (Pa. 2001). It is well settled that this Court may address the legality of a sentence *sua sponte*. **Commonwealth v. Infante**, 63 A.3d 358, 363 (Pa. Super. 2013).

The Supreme Court of the United States has made it clear that the Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment. **North Carolina v. Pearce**, 395 U.S. 711, 717 (1969) (citations omitted). That guarantee consists of three separate constitutional protections: it protects against 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. **Id**. (citations omitted).

In Pennsylvania:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.[3]

There is a dearth of legal authority in Pennsylvania addressing the situation at bar, *i.e.*, where a defendant is charged, convicted, and sentenced on multiple homicide counts where there is only one victim. In **Commonwealth v. Meadows**, 787 A.2d 312, 317 (Pa. 2001), our Supreme Court held that separate convictions for first, second, and third-degree murder, when there is a single victim, are not mutually exclusive. However,

_____

[3] In Pennsylvania, the merger and double jeopardy considerations are the same. **Commonwealth v. Anderson**, 650 A.2d 20, 23 (Pa. 1994). The proper analysis "is whether the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element which is different, in which case the sentences merge[.]" **Id**. at 24. Stated differently, "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." **Commonwealth v. Tarver**, 426 A.2d 569, 572 (Pa. 1981) (quoting **Blockburger v. U.S.**, 284 U.S. 299, 304 (1932)). "Our merger statute merely codified the adoption by the **Tarver/Anderson** decisions of the **Blockburger** test and upholds the long-standing merger doctrine relative to greater and lesser-included offenses." **Commonwealth v. Wade**, 33 A.3d 108, 120 (Pa. Super. 2011). Ultimately, the double jeopardy prohibition against multiple punishment for the same offense "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." **Missouri v. Hunter**, 459 U.S. 359, 366 (1983).

in **Meadows**, while the appellant was convicted of multiple counts, it does not appear that the appellant was sentenced on the separate convictions. Similarly, in **Commonwealth v. Young**, 748 A.2d 166, 175 (Pa. 1999), the Supreme Court held that there was no inconsistency in convicting a defendant of both first and third-degree murder where there was one victim. However, once again, it appears that the appellant in **Young**, while convicted of multiple homicides, was sentenced on only one conviction.

Here, Appellant was convicted and sentenced on all three murder convictions. Thus, this case is similar to **Commonwealth v. Monteil**, 416 A.2d 1105 (Pa. Super. 1979), wherein the defendant was convicted and sentenced, *inter alia*, for third-degree murder and involuntary manslaughter. On review in **Monteil**, this Court concluded that involuntary manslaughter merged with the murder conviction for purposes of sentencing. **Id**. at 1108. Accordingly, we affirmed as to third-degree murder and vacated the sentence on involuntary manslaughter. **Id**.

The merger and double jeopardy implications of such sentences have been addressed in other jurisdictions as well. A non-exhaustive list follows:

**Georgia:** A defendant may be sentenced on only one murder count involving the same victim. **Stewart v. State**, 791 S.E.2d 61, 66 (Ga. 2016) (citing **Malcolm v. State**, 434 S.E.2d 479 (Ga. 1993)).

**Illinois:** If a defendant is convicted on multiple counts of murder involving a single victim, only the conviction for the most serious murder

offense charged will be upheld. The convictions on the less serious murder charges must be vacated. ***People v. Guest***, 503 N.E.2d 255, 269 (Ill. 1986).

**Michigan:** The constitutional prohibition against double jeopardy protects a defendant from multiple punishments for the same offense, and multiple murder convictions arising from the death of a single victim violate double jeopardy. ***People v. Clark***, 622 N.W.2d 344, 347 (Mich.App. 2000) (citations omitted).

**Indiana:** Where a defendant is convicted and sentenced on both felony murder and first-degree murder when there was only one victim, allowing both judgments to stand would amount to double punishment. ***Thompkins v. State***, 383 N.E.2d 347, 351-352 (Ind. 1978).

**Ohio:** Where a defendant is convicted of two aggravated murder counts involving a single victim, the murder convictions merge. ***State v. Lawson***, 595 N.E.2d 902, 913 (Ohio 1992); and ***see State v. Webb***, 638 N.E.2d 1023, 1037 (Ohio 1994) (same).

Contrarily, in ***People v. Leonti***, 222 N.E.2d 591 (N.Y. 1966), the Court of Appeals of New York upheld convictions for both second-degree murder and felony murder on the theory that a single act may violate more than one statute. Furthermore, because the sentences were ordered to run concurrently, the court concluded there was no duplication on punishment. ***Id***. at 596.

After reviewing the standards for merger and double jeopardy in Pennsylvania in conjunction with the aforementioned persuasive authority from other states, we conclude that the three murder convictions in the instant case merge for purposes of sentencing. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). Thus, Appellant's conviction for second-degree murder (burglary) is elementally identical to second-degree murder (robbery) because they are both homicides committed in the course of a felony; neither crime includes an element that the other does not. Furthermore, we conclude that third-degree murder merges with the second-degree murder sentence because it is a lesser included offense with respect to second-degree murder since third-degree murder, as opposed to first or second-degree murder, is simply "[a]ll other kinds of murder[.]" 18 Pa.C.S. § 2502(c). Moreover, we point out that while third-degree murder does require malice, ***Commonwealth v. Santos***, 876 A.2d 360, 363 (Pa. 2005), the malice required for second-degree murder may be inferred by the factfinder from the underlying felony. ***Commonwealth v. Lambert***, 795 A.2d 1010, 1023 (Pa. Super. 2002). Thus, a second-degree murder conviction consists of an unlawful killing with malice, *i.e.*, third-degree murders, with the added element of an underlying felony. Ultimately, in the case at bar, whether in the course of committing a felony or due to any

murder that is not classified as first or second-degree murder, the result is the same: there was only one death.

Therefore, we hold that the trial court imposed illegal sentences when it imposed separate sentences for each of the three murder convictions. The two second-degree murder convictions and the third-degree murder conviction must merge for purposes of sentencing.

For the reasons set forth above, we conclude that there was no error in the trial court's denial of Appellant's motion for a mistrial. However, because we find that the trial court imposed an illegal sentence, we vacate Appellant's judgment of sentence and remand for resentencing. As the resentencing has the potential to disrupt the trial court's entire sentencing scheme, we vacate all of Appellant's sentences and remand for resentencing at all counts. **_See Commonwealth v. Vanderlin_**, 580 A.2d 820, 831 (Pa. Super. 1990) ("[I]f a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme.").

Order denying mistrial affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/13/2017

- 13 -