J-S43039-19

2019 PA Super 308

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TERRY LEE MEREDITH :
:
Appellant : No. 1937 MDA 2018

Appeal from the Judgment of Sentence Entered September 21, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004246-2017

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:              **FILED: OCTOBER 15, 2019**

Appellant Terry Lee Meredith appeals the judgment of sentence entered by the Court of Common Pleas of Dauphin County after he was convicted of Involuntary Deviate Sexual Intercourse (IDSI) and Strangulation.  Appellant argues that the trial court erred in (1) finding a child witness competent to testify and (2) refusing to grant a mistrial based on his father's contact with one of the jurors.  After careful review, we affirm.

Appellant was charged with IDSI, Strangulation, and False Imprisonment in connection with the July 20, 2017 assault of Alicia Suarez ("the victim").  Before trial commenced, Appellant indicated that he wished to proceed *pro se*.  After conducting a colloquy to assess Appellant's waiver of his right to counsel, the trial court permitted Appellant to represent himself and appointed standby counsel.

_____

*  Former Justice specially assigned to the Superior Court.

The following factual background was developed at trial: At the time of the instant offenses, the victim and Appellant were romantically involved and lived together with the victim's two children, twelve-year old C.W. and six-year old M.S. The couple had dated in high school and had recently reconnected through social media.

The victim recalled that, in July 2017, Appellant had become controlling and abusive. On July 20, 2017, Appellant confronted the victim with allegations that she had appeared in a pornography video. The victim claimed that Appellant repeatedly slapped her with an open palm, choked her, kicked her, verbally assaulted her, and threw her into the bedroom. The victim feared Appellant had taken her firearm as he kept reaching for his pocket.

Thereafter, Appellant entered the bedroom and found the victim lying on her stomach. Appellant straddled the victim, pulled her pants down, spit on his penis, forced his penis into her anus, and ejaculated inside of her. Appellant continued to beat her up and then told her to take a shower. The victim saw her twelve-year-old son, C.W., watching as Appellant choked her.

The next day, the victim told Appellant that she needed to go to the hospital as she was spitting blood. Appellant agreed, demanded that she tell hospital personnel that she fell down the stairs, and called 9-1-1 to report that the victim fell down the stairs. C.W. also told the police that the victim fell down the stairs. When the victim was out of the home and safely away from Appellant, she revealed to a female paramedic that she had been beaten, strangled, and raped.

Responding officers and attending medical personnel testified to various physical signs that corroborated the victim's account that she had been attacked and raped. Detective Ashley Baluh noticed the victim was visibly upset and had abrasions on her face, eye, lips, and thigh. In addition, Detective Baluh noted a handprint-shaped bruise on the victim's leg that looked like a "palm and fingertips." Notes of Testimony (N.T.), 6/25/18 - 6/28/18, at 145. Jodi Yocum, a registered nurse, performed a sexual assault examination and also discovered injuries to both of the victim's thighs and two small tears in the victim's rectum. N.T. at 180-83.

C.W. was found to be a competent witness and permitted to testify at trial. C.W. indicated that at the time of the incident, he lived with his mother, younger brother, and Appellant. C.W. recalled that on that day, the victim and Appellant had a big argument about a "porn video." N.T. at 293. C.W. indicated that he saw Appellant choke the victim and put his arms around the victim's neck. On cross-examination, the defense presented the jury with a portion of the C.W.'s videotaped interview at the Children's Resource Center.[1]

The prosecution also presented two recorded phone calls that Appellant made from prison, in one of which Appellant admitted to choking the victim.

At the conclusion of trial, the jury convicted Appellant of IDSI and Strangulation, but acquitted him of False Imprisonment. On September 21,

_____

[1] Neither Appellant nor the trial court provided this Court with any detail in regard to C.W.'s testimony in the CRC interview. While the video recording was played for the jury, the exhibit was not placed in the certified record before this Court.

2018, the trial court sentenced Appellant to an aggregate term of 13 to 26 years' imprisonment followed by three years of state supervised probation. Appellant was read his post-sentence rights and again indicated his desire to represent himself.

On October 1, 2018, Appellant filed a *pro se* post-sentence motion. On October 29, 2018, the Commonwealth filed a response. On November 7, 2018, the trial court denied Appellant's post-sentence motion. On November 19, 2018, Appellant filed a *pro se* notice of appeal.

On November 23, 2018, Appellant filed a *pro se* "Application Form for the Assignment of Counsel." The trial court appointed the Dauphin County Public Defender's Office to represent Appellant. Thereafter, Appellant filed a counseled Concise Statement of Errors Complained of on Appeal pursuant to the trial court's direction for Appellant to comply with Pa.R.A.P. 1925(b).

Appellant raises two issues for our review on appeal:

I.     Did not the [trial] court err in denying [Appellant's] request for a hearing to prove that a Commonwealth witness, a minor, was incompetent to testify because he had a "tainted" recollection under the standards adopted by the Pennsylvania Supreme Court in ***Delbridge I*** and ***Delbridge II***?

II.    Did not the trial court err in denying [Appellant's] motion for mistrial when there was a reasonable likelihood of prejudice stemming from a third party's contact with some of the jurors and the entire jury panel's ensuing discussion of safety concerns?

Appellant's Brief, at 6.

We first review Appellant's claim that the trial court erred in finding C.W to be competent to testify at trial. Specifically, Appellant asserted that C.W.'s recollection was tainted, as he allegedly changed his testimony after hearing a conversation between his mother and his grandmother. We are guided by the following principles:

> Our standard of review recognizes that "[a] child's competency to testify is a threshold *legal issue* that a trial court must decide, and an appellate court will not disturb its determination absent an abuse of discretion." **Commonwealth v. Washington**, 554 Pa. 559, 722 A.2d 643, 646 (1998) (citation omitted) (emphasis added). Our scope of review is plenary. **Commonwealth v. Delbridge** ("**Delbridge II**"), 580 Pa. 68, 859 A.2d 1254, 1257 (2004).
>
> Every witness is presumed competent. Pa.R.E. 601(a). A party who challenges the competency of a minor witness must prove by clear and convincing evidence that the witness lacks "the minimal capacity ... (1) to communicate, (2) to observe an event and accurately recall that observation, and (3) to understand the necessity to speak the truth." **Commonwealth v. Delbridge** ("**Delbridge I**"), 578 Pa. 641, 855 A.2d 27, 40 (2003).
>
> The Pennsylvania Supreme Court has defined "taint" as "... the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques[.]" **Id**. at 30, 35. Within the three-part test described above, "[t]aint speaks to the second prong ..., the mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that the witness is called upon to testify about." **Id**. at 40 (citation omitted, emphasis in original, brackets omitted).
>
> In discussing testimonial competency, Pennsylvania courts have clearly and unequivocally stated that taint is only "a legitimate question for examination in cases involving complaints of sexual abuse made by *young children.*" **Delbridge I**, 855 A.2d at 39 (emphasis added). When a witness is at least fourteen years old, he or she is entitled to the same presumption of competence as an adult witness. **Rosche v. McCoy**, 397 Pa. 615, 156 A.2d 307, 310 (1959). In **Commonwealth v. Judd**, 897 A.2d 1224

(Pa.Super. 2006), *appeal denied,* 590 Pa. 675, 912 A.2d 1291 (2006), this Court held that because the juvenile sexual assault victim "was fifteen years old when she *testified at trial* ..., any issue with her ability to correctly remember the events in question is properly a question of credibility not of taint." ***Judd,*** 897 A.2d at 1229 (emphasis added). Further, the concerns underlying the three-part test for evaluating the testimonial competency of minors "become less relevant as the witness's age increases, ultimately being rendered *totally irrelevant as a matter of law by age fourteen.*" *Id.* (emphasis added). In ***Commonwealth v. Moore,*** 980 A.2d 647 (Pa.Super.2009), this Court reiterated that the critical age for purposes of conducting a taint hearing is not the age at the time of the crime but the age at the time of trial. ***Moore,*** 980 A.2d at 648, 652 (where the minor witness was thirteen at the time of the crime but fourteen at the time of trial, the witness "did not require a competency hearing. Any issues regarding [the witness]'s observation of the incident in question is a question of credibility and does not implicate taint.... [prior decisions of the Pennsylvania courts] preclude a competency hearing for [a] fourteen-year-old....").

***Commonwealth v. Pena***, 31 A.3d 704, 706–707 (Pa.Super. 2011).

In this case, the trial court conducted a competency evaluation of C.W., who was twelve at the time of the crime, but thirteen years old at the time of Appellant's trial. In response to the trial court's questioning, C.W. demonstrated to his ability to communicate with the judge, his capacity to recall previous events such as his previous birthday and Christmas holiday, his understanding of the difference between the truth and a lie, and his respect for the value of the truth. Based on this colloquy, the trial court concluded that C.W. was competent to testify.

Further, Appellant was given ample latitude to cross-examine C.W. with respect to his ability to correctly remember the events in question. When Appellant asked C.W. if his mother told him what to say during his testimony,

C.W. responded that she told him "just to tell the truth and what happened." N.T. at 277. C.W. denied that his mother told him the types of questions that he would be asked at trial. Appellant also questioned C.W. as to whether he overheard any conversation between his mother and grandmother about Appellant. The defense was also permitted to show the jury C.W.'s video recorded testimony that he gave at the Children's Resource Center.

The issue of whether C.W. had the ability to correctly recall the events at issue was a question of credibility to be resolved by the jury, not a question of whether C.W. was competent to testify. *See Pena*, *supra*. As such, we conclude that the trial court did not abuse its discretion in finding that C.W. was competent to testify as a witness in this case.

Appellant also claims the trial court should have granted a mistrial after learning that Appellant's father had contact with one of the jurors. We are mindful of the following principles:

> A defendant has the right to have his or her case heard by a fair, impartial, and unbiased jury and *ex parte* contact between jurors and witnesses is viewed with disfavor. *Commonwealth v. Brown*, 567 Pa. 272, 786 A.2d 961, 972 (2001).
>
> There is, however, no *per se* rule in this Commonwealth requiring a mistrial anytime there is improper or inadvertent contact between a juror and a witness. *See Commonwealth v. Mosley*, 535 Pa. 549, 637 A.2d 246, 249 (1993) (declining to adopt *per se* rule which would require disqualification of juror anytime there is *ex parte* contact between that juror and witness). Whether such contact warrants a mistrial is a matter addressed primarily to the discretion of the trial court. *Brown*, 786 A.2d at 972 (citation omitted). A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said

> to have deprived the moving party of a fair and impartial trial. ***Commonwealth v. Fletcher***, 561 Pa. 266, 750 A.2d 261, 282 (2000) (citation omitted).
>
> ***Commonwealth v. Tharp***, 574 Pa. 202, 830 A.2d 519, 532–533 (2003). Additionally, the burden is on the party claiming prejudice. ***Commonwealth v. Sneed***, 616 Pa. 1, 45 A.3d 1096, 1115 (2012).

***Commonwealth v. McCamey***, 154 A.3d 352, 355 (Pa.Super. 2017).

In ***McCamey***, this Court recognized that such considerations are also applicable when "the potentially prejudicial contact is between a juror and a person other than a witness." ***Id***. at 355 n.2 (citation omitted). In that case, this Court affirmed the trial court's decision that there was no basis for a mistrial after Juror #3 reported that three unknown men outside the district attorney's office indicated that she should remember "guilty, guilty, guilty." ***Id***. at 355-56. The trial court found this communication did not compromise the jury as Juror #3 claimed she could keep an open mind and decide the case based on the evidence and the other jurors confirmed on the record that they could remain impartial.

In the instant case, Appellant's father approached one of the jurors at the end of the first day of trial. The interaction occurred when the jurors were walking from the courthouse to the parking garage at the end of the first day of trial. Juror #10 indicated that she saw a man approach Juror #9 and identify himself as Appellant's father; she did not hear any more of the substance of the conversation. Juror #9 had actually been dismissed from the jury panel that day for an unrelated reason, as he had revealed that he knew one of the witnesses in the trial.

Alternate Juror #1, who had replaced Juror #9, also witnessed the interaction and overheard Appellant's father state that he was a minister and that he was glad Juror #9 was "a friend of my son." N.T. at 215. While this interaction caused the jurors to have a general discussion amongst themselves about their safety, none of the jurors claimed that the interaction in question caused them to fear for their own safety. Thereafter, each juror was questioned individually by the trial court, and all jurors indicated that they could be fair and impartial.

Based on the relevant facts, we find that Appellant did not show that the innocuous interaction of Appellant's father with a juror deprived him of a fair and impartial trial. As a result, we conclude that the trial court did not abuse its discretion in refusing to grant a mistrial on this basis.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judge Dubow joins the opinion.

P.J.E. Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2019