J-S08023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL JUSTIN MILLER | : | |
| | : | |
| Appellant | : | No. 517 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 31, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000549-2023

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JUNE 2, 2026**

Daniel Justin Miller appeals from the judgment of sentence entered after he was convicted of criminal attempt, unlawful contact with a minor, and criminal use of a communication facility.[1]  The Commonwealth alleged that Miller arranged to pay a purported 14-year-old girl for oral sex.  During Miller's trial, a disturbance in the courthouse prompted the trial court to question the jurors *in camera* about their ability to serve.  Miller challenges the sufficiency of the evidence to prove his intent and the trial court's decisions to deny his motion for a mistrial, to retain one juror, and to dismiss another juror.  We affirm.

_____

[1] 18 Pa.C.S. §§ 901(a) (criminal attempt to commit involuntary deviate sexual intercourse, statutory sexual assault, and corruption of minors as defined in 18 Pa.C.S. §§ 3123(a)(7), 3122.1(a)(2), and 6301(a)(1)(ii)), 6318(a)(1) (unlawful contact with a minor), and 18 Pa.C.S. § 7512(a) (criminal use of a communication facility).

On December 9, 2022, Miller saw an ad on an adult-only escort website. "Princess" listed her age as 99 and said she sees men for cash, "incall." She offered a military discount and said, "Text me when your ready." Exhibit 1. Miller used his cell phone to text the number in the ad. Princess replied and stated that she was 14 years old:

Miller:     hey

Princess:   Hi

Miller:     you available

Princess:   Ya

Miller:     you available see me tonight? im military

Princess:   Oh fr that's so neat

            And ya

            Tbh tho I'm 14 so jus lemme kno

Miller:     wym you 14?

Princess:   Lol years old

Miller:     14???

            joking right ?

            hello?

Princess:   No lol

            I swear

Miller:     send a selfie you smoke ?

Princess:   Smoke what

Miller:     weed

Princess:   Idk I never have lol

Miller:     why you on this site ?

Princess:     Idk why not

Miller:     14 selling yourself  ?

Princess:    I mean look if u don't wanna it's fine

*See* Exhibit C-2, at 1–2.  Miller continued his conversation with Princess.  He texted that he wanted a "bj" and that he would wear a condom:

Miller:     how much

Princess:    What u tryna do

Miller:     ?

Princess:    Ya like tell me what u want

Miller:     1hr

Princess:    K starts at 100

Miller:     outcall ?

Princess:    I can't drive lol

Miller:     i can get you ,

        Or uber / lyft

Princess:    Um ok but what u wanna do

Miller:     smoke/chill

Princess:    Wdym chill

Miller:     bj

        what time good for you

Princess:    U gonna wear a condom

Miller:     yes

*See id.* at 2–3.  Miller and Princess discussed when and where they would meet.  Princess insisted that she would not go to Miller's location, even if he paid for her travel.  Miller agreed to go to the Delaware County hotel where

- 3 -

Princess was staying. Princess gave Miller a price of 120 (dollars) for one hour. Throughout the exchange, Miller tested whether Princess was real by asking her to send a selfie holding up two fingers, and then another with three. She did. As the conversation progressed, Princess maintained that she was 14 years old, even as Miller "joke[d]" that Princess was a police officer.

| | |
|---|---|
| Miller: | no bs how old r you rlly |
| Princess: | Still 14 |
| Miller: | we can smoke there ? |
| Princess: | Ya idc |
| Miller: | you ahh cop ? |
| Princess: | No lol |
| Miller: | [police car emoji][police car emoji][police car emoji] |
| Princess: | U play to much fr |
| Miller: | you do too saying you 14 |
| Princess: | Promise I am |
| | It's fine tho like I'm not gonna make u lol |
| Miller: | wyd |
| | you got a full body pic ? |
| | not nude |
| | ? |
| Princess: | [Picture] |
| Miller: | im on my way |
| Princess: | Lol ya right |
| | Lemme kno when ur close then |
| Miller: | ok officer |

> Princess:    K ya I'm done bye
>
> Miller:      it was a joke chill

*Id.* at 17–19.

Miller arrived at the hotel wearing a ski mask and with a handgun in his waistband. He did not bring money or a condom. Miller showed his face to a hotel employee. Princess texted that she was on the third floor. Miller walked up the stairs. Police arrested him near the stairwell. They took his gun, cell phone, wallet, and a small amount of suspected marijuana. Miller consented to a search of his phone.

Police charged Miller with the above crimes, and the case proceeded to a jury trial on June 26 and 27, 2024. The Commonwealth presented testimony from law enforcement witnesses, who described their operation to find people who would arrange for sex with minors online. Special Agent Daniel Moxley of the FBI was the "chatter" who posted the "Princess" ad and communicated with Miller. He explained that he posted Princess' age as 99 years old "Because the person in [the photographs he posted is] obviously not 99 years old. . . . So the only age in question is the age that I provide to the individual during the chat session." N.T., 6/26/25, at 47. Agent Moxley explained, based on his training and experience, that "BJ is short for blow job or oral sex." *Id.* at 55. Agent Moxley explained that people ask "quite often" whether the person sending the chat messages is a police officer. *Id.* at 65.

> Based on my training experience, when somebody is questioning whether I'm a police officer or not, it's because they know that the activity they're about to engage in and that they've already engaged in is illegal. And they're trying to make sure that I'm not

a cop. A lot of people think that when you ask a police officer, "are you a police officer?" they have to say yes.

*Id.* at 65–66 (punctuation altered). Detective Brian Alexander, part of the arrest team, testified that Miller was seen in the third-floor hallway about ten feet from the door and apprehended before he entered the stairwell. *Id.* at 120–28.

Miller testified on his own behalf on the second day of trial. He stated that he never believed the person was 14 years old. N.T., 6/27/24, at 12. He explained: "I thought why would a 14-year-old instantly hop on an escort site that's meant for adults and just blatantly tell me they're 14. I thought it was suspect." *Id.* Miller testified that he didn't stop communicating with her because he thought she was playing games. *Id.* On this site, Miller "very frequently" experienced people being dishonest about their age, but never being younger than they said they were. *Id.* at 13.

While Miller was testifying, a disturbance involving a crying child erupted in the hallway of the courthouse. Deputies ran through the courtroom where Miller's trial was occurring to address this issue.[2] This unexpected upheaval

_____

[2] The notes of testimony do not reflect any words that were spoken during the disturbance.

Q.     And once you were arrested, did you speak with any --

***

THE COURT: If you need additional instruction, let me know what you think. I think I've covered it, but not limited to that.

N.T., 6/27/24, at 15 (asterisks in original). The parties and trial court all agree that a child cried in the hallway and deputies passed through the courtroom.

from an unrelated case affected several jurors. Immediately thereafter, Miller moved for a mistrial, noting that one juror "was so upset [she] had to leave the courtroom visibly crying," and another juror was also emotional. *Id.* at 16. The trial court agreed to question both jurors. Miller then asked that all the jurors be questioned: "were they impacted by it and do they feel that they can continue." *Id.* at 16–18. The trial court did so. Jurors 1 through 10 indicated they could continue to be fair and impartial. *Id.* at 19–26.

Juror 11, who had left the courtroom, indicated that she could be fair and impartial. The trial court and the prosecutor observed Juror 11 to be calm; Miller disagreed.

> THE COURT: . . . Juror number 11, come on, have a seat.
>
> JUROR 11: I apologize.
>
> THE COURT: No, no. Don't apologize. Let me ask you just a couple of questions.
>
> JUROR 11: Yes sir.
>
> THE COURT: You look more relaxed now than you were five minutes earlier.
>
> JUROR 11: I feel better. I just needed a minute to get myself together. That was just very jarring, I'm sure for everybody. But it was a lot for me.
>
> THE COURT: Okay. I'm going to ask you these questions, although I think I know the answer based on what you said. Did you notice and hear the commotion in the hallway from an unrelated case earlier today?
>
> Juror 11: I only--
>
> THE COURT: Did you hear the commotion in the case from the hallway?
>
> JUROR 11: Yes, sir.

THE COURT: Did you hear that?

JUROR 11: Yes, I could hear that.

THE COURT: Okay.  And did you see and hear the deputies run through the courtroom to deal with it?

JUROR 11: Yes, I did.  Yes, I did.

THE COURT: And despite hearing that and seeing that, do you believe you can continue to be a fair and impartial juror in this case?

JUROR 11: Yes, I believe so.

THE COURT: All right.  Thank you, ma'am.

JUROR 11: Thank you.

THE COURT: My observation is the juror was composed and calm and acknowledged that she was emotional, has recovered.

[The prosecutor]: I agree, Your Honor.  And she was not -- she did not appear to be crying or holding back tears since we noted that regarding the [inaudible.]

[Defense counsel]: I think I had . . . a different observation.  I believe that she was still attempting to compose herself.  She was not crying, but I observed her to appear to be still holding back tears.

N.T., 6/27/24, at 26–28.

The trial court next questioned Juror 12, who stated that he could not be fair and impartial.  On further questioning, Juror 12 indicated his concern with the timing of the disturbance.

THE COURT: . . . Come on in, juror number 12.  Have a seat.  Just wanted to ask you a couple questions based on what just occurred a few minutes ago.  Did you hear the commotion in the hall from an unrelated case earlier?

JUROR 12: Yeah.

THE COURT: Did you see the deputies go through to deal with it? Yes, or no? Did you see the deputies go through to deal with it? Go through our courtroom?

JUROR 12: Yes.

THE COURT: Did you see that? Despite that, do you think you can continue to be a fair and impartial juror in this case?

JUROR 12: No.

THE COURT: All right, tell me why.

JUROR 12: Because it's like we are in the different case. So what happens is the distractions, it can be -- we don't know what happens. So I'm guessing like there is a family.

THE COURT: There's nothing to do with this case. I've already told you that. That commotion had nothing to do with this case, did you hear me say that?

JUROR 12: Yeah.

THE COURT: All right. But I'm just curious why you think that would affect your deliberation in this case.

JUROR 12: Like we are in middle of the conversation. So when this seriously, she was asking the question so we got distracted what is happening? So we want to know the continuously what is going on. The questions when we asked that he was answering.

THE COURT: Oh, he's not finished. He would come.

JUROR 12: Yeah, he was not finished.

THE COURT: The Defendant will come back to the stand and finish his questions. It didn't interrupt the case.

JUROR 12: I would say like interrupt means for certain time so we can maybe some we need to recap the things. The main thing is like we need to go again the same questions and then [hear] it, otherwise that's where we got distracted.

THE COURT: Okay. So, if you reheard the testimony of the Defendant, would that change your opinion about whether you can continue to --

JUROR 12: We can concentrate. I would say like what's going on not the opinion because sometimes when we distracted, like

- 9 -

immediately we forgot like what he said. So it's better to have like if we heard it again.

THE COURT: I'm not trying to be difficult. I'm just trying to understand because I'm not following your logic here at all. I asked whether you could continue to be a fair and impartial juror and you said without much hesitation, no. And I'm trying to understand why not. I think you're saying the testimony of the Defendant was interrupted and you would need to rehear it. They're two completely different things, but which is it?

JUROR 12: No, just the thing I would say like this, the same like the way it was, I feel like it's like because it is for crucial, like for the case we already hear the one side and then now he's the main guy. We want to hear from him like actually what's happens. So that's why like it is kind of, we want to concentrate properly about what he's saying and then understand what the situation benefits.

THE COURT: Well, here's my choice with you sir. Based on your earlier answer, I would expect there's at least a possibility you would be excused as a juror and I would have an alternate to take your place. And that's pretty much where I'm leaning unless you make it clear to me that you think if the testimony of the Defendant starts at the beginning and is recounted to you, that you can continue as a fair and impartial juror. Now, which is it?

JUROR 12: So, I would say like yeah, I can continue but the thing is, whole thing is better to understand him. So that's what is happening on the distraction. So, it's better to have that again.

THE COURT: Understand. Okay. Thank you, sir.

JUROR 12: Thank you.

*Id.* at 28–31.

The alternate jurors, Juror 13 and Juror 14, indicated that they could be fair and impartial. *Id.* at 35–36. The trial court denied Miller's motion for a mistrial and, over Miller's objections, ordered that Juror 11 would not be dismissed and that Juror 12 would be dismissed. The court instructed the jury

that the disturbance was "from an unrelated what appears to be a child custody case or dispute." *Id.* at 40.

Miller restarted and concluded his testimony without disruption. On cross-examination, Miller acknowledged he knew the person pictured in the "Princess" ad was not 99 years old. N.T., 6/27/24, at 53. He maintained that he "had doubts" that Princess' statements were truthful. *Id.* at 59–60. Miller explained that he asked if Princess was a police officer because he "thought they was bullshitting, so [he] was bullshitting back with them." *Id.* at 64. He testified he "didn't believe" Princess saying she was 14. *Id.* He insisted he did not intend to have sex with a 14-year-old but instead "went to confront them and make sure they were real." *Id.* at 67. However, Miller said if the other person was an adult, he did intend to have sex with her. *Id.* Miller disputed the testimony that he was arrested as he was entering the stairwell; he claimed he was descending the stairs from the fourth floor when police pulled him through the door into the third-floor hallway. *Id.* at 68. Miller explained that he had a concealed carry permit and took his firearm everywhere; he said he was wearing a ski mask for warmth in December. *Id.* at 72–74.

The jury found Miller guilty. On January 31, 2025, the trial court sentenced Miller to an aggregate term of 54 to 108 months of confinement and 5 years of consecutive probation. Miller timely appealed. Miller and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Miller presents five questions for review:

1. Whether the evidence presented at trial was insufficient to support verdicts of guilty for the crimes of Criminal Attempt to Commit Involuntary Deviate Sexual Intercourse less than 16 years, Criminal Attempt to Commit Statutory Sexual Assault, Unlawful Contact with Minors, or Criminal Attempt to Commit Corruption of Minors, inasmuch as the Commonwealth failed to prove beyond a reasonable doubt that [Miller] possessed the necessary *mens rea*, that he had formed a fixed intent to commit the crimes, or that he recklessly disregarded the risk that the individual was less than 16 years of age?

2. Whether the evidence presented at trial was insufficient to support the verdict of guilty for the crime of Criminal Use of Communication Facility in that the Commonwealth failed to prove beyond a reasonable doubt that [Miller] utilized a communication facility to facilitate an attempt to commit a felony crime under the Pennsylvania Crimes Code[?]

3. Whether the trial court erred when it denied defense counsel's request for a mistrial, after a disturbance both outside and inside the trial courtroom required the trial judge to stop proceedings in the middle of [Miller's] testimony and caused emotional distress to several seated jurors, where the trial court failed to give adequate curative instruction, all in violation of [Miller's] right to a fair trial under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

4. Whether the trial court erred and abused its discretion by denying [Miller's] motion to discharge juror #11 after she unilaterally left the courtroom because she was visibly distraught from a distraction in the hallway and by sheriff deputies entering the courtroom during trial such that the juror's ability to perform her duty was clearly impaired, which is in violation of [Miller's] right to a fair trial under the United States and Pennsylvania Constitutions?

5. Whether the trial court erred and abused its discretion by discharging juror #12 mid-trial where the juror explained he could be fair and impartial provided [Miller] was given a full and fair opportunity to testify, considering the trial was disrupted at the time [Miller] was on the witness stand and there were no facts presented that the juror's ability to perform his duty as juror was impaired, which is in violation of [Miller's]

right to a fair trial under the United States and Pennsylvania Constitutions?

Miller's Brief at 5–7 (reordered).

We first address Miller's sufficiency claims because these claims would result in Miller's discharge if they succeed. *Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (*en banc*). Miller argues the Commonwealth did not produce sufficient evidence to prove his intent for all five convictions, specifically that the age of the person he intended to pay for sex was less than 16 years.

Sufficiency is a question of law, for which "our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Beauchamps*, 320 A.3d 717, 721 (Pa. Super. 2024) (quoting *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015)).

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Id.* (quoting *Commonwealth v. Wallace*, 244 A.3d 1261, 1273–74 (Pa. Super. 2021)) (brackets omitted). A court determining whether a jury could find every element of the crimes charged recognizes that the jury "is free to believe all, part, or none of the evidence" from trial. *Commonwealth v. Frein*, 206 A.3d 1049, 1063 (Pa. 2019) (citation omitted).

The offenses in this case all require proof of intent. *See* 18 Pa.C.S. §§ 901(a) ("intent to commit a specific crime"), 6318(a)(1) ("purpose of engaging in" a Chapter 31 offense), 7512(a) ("facilitate" "the attempt of" a felony). A person acts intentionally with respect to "attendant circumstances," like the age of an intended sexual partner, if "he is aware of the existence of such circumstances or he believes or hopes that they exist." 18 Pa.C.S. § 302(a). Simply put, the attempted and completed offenses here require proof that Miller was at least "aware" that his intended sexual partner was younger than 16. *See id.*

Intent, like any element of a crime, can be proven with circumstantial evidence. *Commonwealth v. Landis*, 48 A.3d 432, 446 (Pa. Super. 2012) (*en banc*). "We must look to all the evidence to establish intent, including, but not limited to, the defendant's conduct as it appeared to his eyes." *Id.* (quoting *Commonwealth v. Alford*, 880 A.2d 666, 671 (Pa. Super. 2005) (brackets omitted)). Notably, the Commonwealth cannot prove a defendant's intent "solely on the jury's disbelief of" the defendant's testimony to the contrary. *Commonwealth v. Graham*, 596 A.2d 1117, 1118 (Pa. 1991) (citing *Cruzan v. N.Y. Cent. & Hudson River R.R.*, 116 N.E. 879 (Mass.

1917)). Rather, "intent must be inferred from a close scrutiny of all the facts and circumstances." **Commonwealth v. Morgan**, 401 A.2d 1182, 1187 (Pa. Super. 1979) (*en banc*).

Here, Miller's text messages and actions provided a sufficient basis for the jury to find that Miller intended to have oral sex with "Princess" and was at least "aware" that she was 14 years old. 18 Pa.C.S. § 302(a). From the beginning of the exchange, Princess said she was 14. As Miller arranged to go to her hotel and pay her for a "bj," he repeatedly asked her about her age. She maintained that she was 14. Miller asked for "selfie" photographs and asked if Princess was a cop. Princess sent the photographs and denied being a police officer. Miller persistently inquired into Princess' claim that she was 14. The jury could find from Miller's inquiry that he was trying to find out whether the person he was going to pay for sex was indeed the age she claimed to be. Miller went to the hotel, albeit without any cash or condoms.

Based on these facts, the jury could find from Miller's actions that once he saw the 14-year-old he had been text messaging, he intended to complete the sexual transaction as agreed. While doing so would still require Miller to procure cash and a condom, Miller's act of going to the hotel and walking up the stairs, all while messaging Princess, is a substantial step toward the crimes alleged. The jury was free to reject Miller's testimony to the contrary and conclude from the remaining evidence that Miller was aware that Princess was 14 years old. This is a simple, logical inference from the circumstances and

would be reasonable for the jury to find. Therefore, Miller's sufficiency challenges fail.

Miller's remaining issues concern the trial court's response to the disruption that occurred during his testimony on the second day of trial. He argues that the trial court abused its discretion by denying Miller's motion for a mistrial, by failing to dismiss Juror 11 (who left the courtroom without being excused and looked distraught when questioned), and by dismissing Juror 12 (who answered "No," he could not be fair and impartial, but then elaborated in response to the trial court's questions).

The decision to declare a mistrial based on an event that disturbs the jury "is a matter addressed primarily to the discretion of the trial court. A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to have deprived the moving party of a fair and impartial trial." *Commonwealth v. McCamey*, 154 A.3d 352, 355 (Pa. Super. 2017) (quoting *Commonwealth v. Tharp*, 830 A.2d 519, 532–33 (Pa. 2003)).

> When the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, it was charged with the duty imposed on the court below; it is necessary to go further and show an abuse of discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623–24 (Pa. Super. 2003) (quoting *Commonwealth v. Garcia*, 661 A.2d 1388, 1394–95 (Pa. Super. 1995)) (brackets and ellipses omitted).

"A defendant has the right to have his or her case heard by a fair, impartial, and unbiased jury" free from improper contact. *McCamey*, 154 A.3d at 355 (quoting *Tharp*, 830 A.2d at 532). When a defendant moves for a mistrial, it is his burden to establish that the disturbance "may reasonably be said to have deprived [him] of a fair and impartial trial." *Id.* (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. 2012) (burden)). Unless "an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal," a trial court is not required to grant the "extreme remedy" of a mistrial. *Commonwealth v. Cornelius*, 180 A.3d 1256, 1261 (Pa. Super. 2018) (*en banc*) (quoting *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009)).

An example of a trial court's permissible exercise discretion to address a potentially prejudicial intrusion on a jury occurred in *McCamey*, 154 A.3d 352. After a break in McCamey's trial, one juror told the tipstaff that a member of the public spoke to her near the district attorney's office during a break in trial; the person told her, "Just remember, guilty, guilty, guilty." *Id.* at 354–56. The juror then told the other jurors about this statement. The trial court questioned the juror, who said that the comment would not influence her and that she could still be able to decide the case based on the evidence. *Id.* at 356. The trial court also questioned the other jurors and

alternates, finding them to be fair and impartial. ***Id.*** We held that questioning the jurors was an appropriate response to the comment and that the trial court did not abuse its discretion by denying the defendant's motion for a mistrial. ***Id.*** at 356–57.

Here, as in ***McCamey***, the trial court appropriately responded to the disturbance during trial by questioning the jurors about it. The court was able to question the jurors about their ability to be fair and impartial after the sound of a crying child and the deputies passing through the courtroom. The court instructed the jury that the disturbance was unrelated to Miller's case. Miller was able to restart and conclude his testimony without further incident. That some jurors were emotional does not imply that Miller was deprived of a fair trial. The trial court therefore acted within its discretion by questioning the jurors rather than granting Miller's motion for a mistrial. Miller's mistrial issue fails.

As to the dismissal (or retention) of a seated juror, this action "can only be done by a trial court, on the record, with notice to the parties, for cause." ***Bruckshaw v. Frankford Hosp. of City of Philadelphia***, 58 A.3d 102, 104 (Pa. 2012). A "trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." ***Commonwealth v. Ransom***, 328 A.3d 1127, 1139 (Pa. Super. 2024) (quoting ***Commonwealth v. Marrero***, 217 A.3d 888, 890 (Pa. Super. 2019)). "Absent a palpable abuse of discretion, the court's determination will

not be reversed." ***Commonwealth v. Treiber***, 874 A.2d 26, 31 (Pa. 2005) (quoting ***Commonwealth v. Jacobs***, 639 A.2d 786, 790 (Pa. 1994)). In general, a court reviewing this issue may not disturb a trial court's determinations of whether a juror answered questions credibly. ***See, e.g.***, ***Ransom***, 328 A.3d at 1139 (finding no abuse of discretion to excuse a juror despite her statement that she could remain fair and impartial); ***Marrero***, 217 A.3d at 892 (finding no abuse of discretion to retain a juror who stated she could reach a fair and impartial decision).

Here, the trial court accepted Juror 11's statement that she could be fair and impartial and Juror 12's initial statement that he could not. Although Juror 11 had left the courtroom unexcused and was emotional, the determinative factor in the trial court's ruling was her affirmative answer that she could be fair and impartial. Likewise, although Juror 12 explained why he said he could not be fair and impartial, the trial court could rely on this initial statement. Credibility is best left to the trial judge who had the opportunity to see and hear the juror firsthand. ***Ransom***, 328 A.3d at 1139. Because the court was free to credit both jurors' responses, we discern no palpable abuse of discretion in retaining Juror 11 and dismissing Juror 12. Miller's final issues fail.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2026